T.C. Memo. 2005-72

UNITED STATES TAX COURT

PATRICIA A. HENDRICKS AND JOHN J. HENDRICKS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11416-03L.          Filed April 5, 2005.

<u>Randall M. Willard</u>, for petitioners.

<u>John A. Weeda</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  The petition and amended petition in this
case were filed in response to Notices of Determination
Concerning Collection Action(s) Under Section 6320 and/or 6330
(notices of determination) sent separately to Patricia A.
Hendricks (petitioner) and John J. Hendricks (Mr. Hendricks).  In
the notice of determination sent to petitioner, respondent denied

her request for relief from joint and several liability pursuant to section 6015. After concessions, the sole issue for decision is whether respondent abused his discretion in denying petitioner's request for relief from joint and several tax liability pursuant to section 6015 as to 1983.

Unless otherwise noted, all section references are to the Internal Revenue Code in effect at all relevant times, and amounts are rounded to the nearest dollar.

FINDINGS OF FACT

Some facts have been stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

Petitioner and Mr. Hendricks (collectively, the Hendrickses) were residents of the State of Colorado at all times relevant to this case. The Hendrickses have been married for more than 45 years and have at all times filed joint Federal income tax returns; i.e., Form 1040, U.S. Individual Income Tax Return. Both petitioner and Mr. Hendricks are more than 70 years of age and are retired. Before the Hendrickses married, they agreed to separate their responsibilities, deciding that petitioner would run the household while Mr. Hendricks would be responsible for their finances.

Mr. Hendricks worked as a farm manager and a farm and ranch real estate broker, and he invested in real estate. Mr.

Hendricks did not discuss business matters with petitioner, nor was petitioner ever an employee of any of Mr. Hendricks's businesses.

Mr. Hendricks maintained several separate business bank accounts to which petitioner had no access. The Hendrickses maintained only one joint checking account from which petitioner paid personal and household expenses.

Petitioner completed 2 years of college, where she studied art. Petitioner did not take any business courses or classes on income taxation or preparation of income tax returns. After marrying Mr. Hendricks, petitioner stayed at home to raise their five children and run their household. Petitioner's only involvement in family finances was to pay the monthly household expenses. Petitioner relied upon Mr. Hendricks for financial, business, and tax decisions.

The Hendrickses have led frugal lifestyles. There is no evidence that during the relevant years they made any lavish or unusual expenditures.

On November 18, 1980, Mr. Hendricks met with the Hendrickses' certified public accountant, Kurt Grosser (Mr. Grosser), and a broker for a partnership called Boulder Oil and Gas Associates, 1980 (Boulder Oil and Gas). Despite its being the first he had heard of the partnership, during the meeting Mr. Hendricks agreed to invest $94,002 in Boulder Oil and Gas and

gave the broker an initial installment check from one of his business checking accounts. Mr. Hendricks completed the purchase by paying two additional installments over the next 2 years by checks drawn on his business accounts. The partnership interest in Boulder Oil and Gas was placed in Mr. Hendricks's name alone.

Petitioner had no knowledge that Mr. Hendricks was making an investment in Boulder Oil and Gas. Mr. Hendricks did not consult petitioner about making the investment. Petitioner did not receive any mail regarding Boulder Oil and Gas because all mail from the partnership was sent to Mr. Hendricks's business address.

Just prior to Mr. Hendricks's investment in Boulder Oil and Gas, on January 31, 1980, Mr. Hendricks traded various pieces of farmland that the Hendrickses had previously owned for 10 condominiums in Fort Collins, Colorado. The condominiums were not acquired from proceeds made available through Mr. Hendricks's investment in Boulder Oil and Gas. The condominiums were owned jointly by the Hendrickses.

During the relevant years, the Hendrickses relied upon Mr. Grosser, who had promoted Boulder Oil and Gas, to prepare their tax returns. Petitioner's only involvement in preparing the tax returns for the relevant years at issue was to complete a questionnaire about personal and household expenses. Petitioner relied on Mr. Hendricks to communicate with Mr. Grosser for the

preparation of their tax returns.  When Mr. Hendricks brought home the income tax returns prepared and signed by Mr. Grosser, petitioner would sign them in reliance on the accountant's and her husband's recommendations to sign.  Except for the years they reported loss activity from Boulder Oil and Gas, i.e., 1980-83, the Hendrickses have neither had their Federal tax returns examined, nor have they had taxes in excess of the amount reported on their returns assessed.  The Hendrickses claimed $158,521 in losses arising from Boulder Oil and Gas on their joint 1983 tax return on Schedule E, Supplemental Income and Loss.  This amount did not appear on the face of the return, but was listed on Schedule E, combined with the income and expenses of at least 11 other properties, including the condominiums and an office building.

On September 10, 1985, respondent sent the Hendrickses a Form 4549, Income Tax Examination Changes, which reflected proposed changes to the Hendrickses' joint Federal income tax returns for 1980-83.  This was the first time petitioner learned of Mr. Hendricks's investment in Boulder Oil and Gas.  On October 11, 1985, the Hendrickses received a notice of deficiency for 1980-82.  The Hendrickses failed to petition the Court for redetermination of the deficiencies set out in the notice of deficiency and consented to an extension of the assessment date. On June 10, 1987, respondent assessed the following amounts as

determined in the notice of deficiency with respect to 1980-82:

|      |            | Additions to tax and increased interest | | |
| Year | Deficiency | Sec. 6659 | Sec. 6661 | Sec. 6621(d) |
|------|------------|-----------|-----------|--------------|
| 1980 | $27,920    | --        | --        | $33,970      |
| 1981 | $45,294    | $13,588   | --        | $67,177      |
| 1982 | $70,920    | $15,918   | $4,465    | $53,749      |

With respect to 1982, respondent subsequently abated the additions to tax under sections 6659 and 6661.

The Hendrickses began making payments shortly after the assessment was made, paying the balance due for 1980 in full by October 13, 1987. The liability for 1981 was paid in full by December 1, 1989, and the liability for 1982 was paid in full by August 27, 1993. Over the years 46 payments in varying amounts were made totaling $387,903, the moneys being derived, in part, from the sale of several of the condominiums.

On October 11, 1985, the same day the Hendrickses received the notice of deficiency for 1980-82, respondent sent a letter to Mr. Hendricks with respect to 1983, informing him that Boulder Oil and Gas was being examined under the administrative procedures enacted by the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324. Mr. Hendricks received this letter at his place of business and did not take the letter home. On April 25, 1988, respondent mailed a letter to the Hendrickses at their home address, which stated that respondent was proposing adjustment to their joint 1983 tax

return.  The only other correspondence sent to the Hendrickses was a Notice of Final Partnership Administrative Adjustments (FPAA) mailed to the Hendrickses on February 6, 1989.

On April 20, 1989, Boulder Oil and Gas filed a petition with the Court in response to the FPAA (Boulder Oil and Gas case).

On October 31, 1997, Mr. Hendricks transferred his jointly held interest in the remaining condominiums to petitioner.  For 2 years before the transfer of his interest in the remaining condominiums, Mr. Hendricks had been advised by his attorney and John Angeli (Mr. Angeli), the Hendrickses' new certified public accountant, to transfer his interest in the condominiums to petitioner in order to protect the condominiums from any creditors of Mr. Hendricks in the substantial farming enterprise Mr. Hendricks was engaged in at the time.  Mr. Hendricks's actual intent in making the transfers was to protect the investment in the condominiums because they constituted the Hendrickses' only financial resource for their retirement outside of Social Security.  At the time of the transfer, the Hendrickses mistakenly believed that they had settled the 1983 tax year and did not owe any tax liabilities associated with 1983 or any other years.

The farming enterprise Mr. Hendricks was engaged in at the time of the transfer to petitioner involved a 10-year lease-purchase of 12,270 acres of Colorado farmland between him as

lessee and Colmeno of Colorado, Inc., as lessor. The lease commenced in January 1994, and was to run until 2003. The arrangements required Mr. Hendricks to make annual payments totaling $350,550 consisting of payments for the land lease, an equipment lease, a loan of $655,600 from a firm called Menotex, a prior mortgage, and real property taxes. The farming enterprise failed because Mr. Hendricks was unable to meet the income projections needed to service the payments. On February 21, 2001, he liquidated the farming enterprise and sold its assets at an auction. It took Mr. Hendricks until January 2004 to finally pay off all creditors from that undertaking.

On June 18, 1998, we issued an Order to Show Cause why the Boulder Oil and Gas case should not be decided in accordance with several test cases. On November 23, 1998, we issued an Order and Decision granting respondent's Motion for Entry of Decision, making adjustments to the partnership items of Boulder Oil and Gas for the 1983 tax year.

On October 14, 1999, respondent sent a letter to the Hendrickses transmitting a Form 4549A-CG, Income Tax Examination Changes, explaining how the adjustments made during the TEFRA proceeding affected their individual income tax return for 1983. Respondent assessed the Hendrickses' deficiency for 1983 on February 16, 2000.

On June 27, 2000, and July 17, 2000, Mr. Angeli faxed correspondence to respondent alleging that the Hendrickses had settled the 1983 tax liabilities and questioned the propriety and timeliness of the 1983 assessment. Respondent sent a letter to the Hendrickses dated October 26, 2000, explaining the origin of the 1983 tax liability in the TEFRA proceeding and attaching copies of the various notices sent to the Hendrickses over the years from the time the proceeding began. Respondent included transcripts of account showing that while the 1980-82 tax liabilities had been assessed and paid, the 1983 deficiency had not been assessed until February 16, 2000, because of the stay on assessment caused by the TEFRA proceeding.

Respondent filed a Notice of Federal Tax Lien in Larimer County, Colorado, for the assessed 1983 tax liability and sent the Hendrickses a Notice of Federal Tax Lien and Your Right to a Hearing Under IRC 6320 on November 20, 2000.

On December 20, 2000, petitioner and Mr. Hendricks submitted their separate Forms 12153, Request for a Collection Due Process Hearing, and petitioner submitted a Form 8857, Request for Innocent Spouse Relief. A hearing was held by telephone on February 11, 2003. Respondent issued separate notices of determination to petitioner and Mr. Hendricks on June 6, 2003, sustaining the filing of notices of Federal tax lien and denying relief to petitioner under section 6015.

The Hendrickses have made payments totaling approximately $110,150 against the balance due on their 1983 tax liabilities. The deficiency attributable to Mr. Hendricks's investment in Boulder Oil and Gas for 1983 was $63,176. After accounting for the payments previously made, the Hendrickses' current balance due for 1983 is approximately $300,000.

The main source of the Hendrickses' current income consists of monthly Social Security checks and approximately $1,000 in rental income per month from the remaining condominiums. The Hendrickses' monthly living expenses exceed their income by about $1,100. They are able to meet their living expenses only through financial assistance from their children.

OPINION

Pursuant to section 6330, petitioner sought relief from respondent's notice of determination sustaining the proposed collection action. Section 6330 allows a taxpayer to raise appropriate spousal defenses under section 6015. Sec. 6330(c)(2)(A)(i); sec. 301.6330-1(e)(2), Proced. & Admin. Regs.

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable to pay the entire tax due. Sec. 6013(d)(3). A spouse (requesting spouse) may, however, seek relief from joint and several liability under section 6015(b), or if eligible, may allocate liability according

to provisions under section 6015(c).  Sec. 6015(a).  If relief is not available under section 6015(b) or (c), an individual may seek equitable relief under section 6015(f).

To qualify for relief from joint and several liability under section 6015(b)(1), a requesting spouse must establish:

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of 1 individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election, * * *.

The requirements of section 6015(b)(1) are stated in the conjunctive.  Accordingly, a failure to meet any one of them prevents a requesting spouse from qualifying for the relief offered therein.  Alt v. Commissioner, 119 T.C. 306, 313 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

Respondent does not dispute that petitioner satisfies the requirements of subparagraphs (A), (B), and (E) of section

6015(b)(1). Therefore, the controversy arising from the deduction of the Boulder Oil and Gas losses focuses on: (1) Whether petitioner, in signing the joint 1983 tax return, knew or had reason to know of the understatement; and (2) taking into account all the facts and circumstances, whether it would be inequitable to hold petitioner liable for the resulting deficiency.

The requirement of section 6015(b)(1)(C) is similar to the requirement of former section 6013(e)(1)(C) in that both provisions require the requesting spouse to establish "in signing the return, he or she did not know, and had no reason to know" of the understatement. Because of their similarities, analysis in opinions concerning former section 6013(e)(1)(C) remains instructive to our analysis for section 6015(b)(1)(C). Jonson v. Commissioner, 118 T.C. 106, 115 (2002), affd. 353 F.3d 1181 (10th Cir. 2003); Butler v. Commissioner, 114 T.C. 276, 283 (2000).

An examination of the record reveals that only Mr. Hendricks executed the investment papers in Boulder Oil and Gas and that the partnership interest was placed in his name alone. Mr. Hendricks paid for the Boulder Oil and Gas investment with checks drawn from one of his business accounts, to which petitioner had no access. All mail from Boulder Oil and Gas was sent to Mr. Hendricks's business address. Petitioner did not see any mail

from Boulder Oil and Gas, because Mr. Hendricks did not bring any of this mail home.

Petitioner's lack of knowledge regarding the transaction is corroborated by the Hendrickses' testimonies at trial. Mr. Hendricks testified that he did not discuss business or financial matters, including his investment in Boulder Oil and Gas, with petitioner and that he did not consult petitioner when he decided to make the investment.

Having observed the Hendrickses' appearances and demeanors at trial, we find their testimonies to be honest, forthright, and credible. In view of their testimonies, we find that petitioner did not have actual knowledge of Mr. Hendricks's investment in Boulder Oil and Gas at the time the joint 1983 tax return was signed.

Section 6015(b)(1)(C) also requires that petitioner establish that she did not have reason to know that there was an understatement. Whether petitioner had reason to know of an understatement is a question of fact which must be determined based upon the entire record. Guth v. Commissioner, 897 F.2d 441, 442 (9th Cir. 1990), affg. T.C. Memo. 1987-522; Terzian v. Commissioner, 72 T.C. 1164, 1170-1172 (1979). Petitioner had reason to know of an understatement if a reasonably prudent taxpayer under her circumstances could be expected to know that the tax liability stated was erroneous or that further

investigation was warranted.  Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. T.C. Memo. 1988-63; Shea v. Commissioner, 780 F.2d 561, 566 (6th Cir. 1986), affg. in part and revg. in part on another ground T.C. Memo. 1984-310; Bokum v. Commissioner, 94 T.C. 126, 148 (1990), affd. 992 F.2d 1132 (11th Cir. 1993).

When deciding whether petitioner had reason to know of an understatement, we consider several factors including petitioner's level of education, her involvement in the financial transactions which gave rise to the deductions, the presence of lavish or unusual expenditures compared to her past standard of living, and her husband's openness concerning these transactions. See Stevens v. Commissioner, supra at 1505; Butler v. Commissioner, supra at 284; Flynn v. Commissioner, 93 T.C. 355, 365-366 (1989).  In making our determination, we must consider the interplay or balance of the factors, instead of merely counting the factors in a requesting spouse's favor.  Guth v. Commissioner, supra at 444.

At the time petitioner signed the returns, petitioner had completed 2 years of college, where she studied art.  She did not have any education or work experience in tax, financial, or accounting matters.  We find nothing in the record regarding her education and experiences that would or should have alerted her to the pitfalls of this situation.

Mr. Hendricks dominated the financial side of the marriage with petitioner playing a minor role in the family's finances. Petitioner did not participate in any of Mr. Hendricks's business activities. Although Mr. Hendricks was not deceitful regarding their finances, he did not consult with petitioner about making the investment in Boulder Oil and Gas and did not disclose that the investment had been made. Moreover, petitioner played a minimal role in the preparation of the tax returns. The only information petitioner provided was a list of personal and household expenses. She relied upon Mr. Hendricks to provide the remainder of the information.

The Hendrickes have led frugal lifestyles. We find no evidence in the record that the Hendrickses made any lavish or unusual expenditures during the relevant years.

Considering all of the circumstances concerning the joint 1983 tax return, a reasonably prudent taxpayer under petitioner's circumstances--living a modest life, raising a family of five children, uninvolved in the financial affairs of the family, and without any financial background--at the time of signing could not be expected to know about the understatement attributable to Mr. Hendricks's investment in Boulder Oil and Gas.

Is there, however, a duty of inquiry? In order for petitioner's duty of inquiry to arise, she must first harbor doubts about the accuracy of the return. Stevens v.

Commissioner, supra at 1507. Petitioner may be put on notice of the understatement if a reasonably prudent taxpayer in her position would be led to question the legitimacy of the deduction. Id. at 1505. The Court of Appeals for the Second Circuit has concluded:

> Tax returns setting forth large deductions, such as tax shelter losses offsetting income from other sources and substantially reducing or eliminating the couple's tax liability, generally put a taxpayer on notice that there may be an understatement of tax liability.

See Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228.

Mr. Hendricks was a farm and ranch real estate broker and an investor, which required him to report his various investment activities on Schedule E on the Hendrickses' Federal income tax return. On their joint 1983 tax return, the Hendrickses claimed $158,521 in losses arising from Boulder Oil and Gas. This amount did not appear on the face of the return, but it was listed on Schedule E, combined with the income and expenses of at least 11 other properties, including the condominiums and an office building.

Considering all of the circumstances, we conclude that petitioner was not put "on notice" of the understatement. See Boyle v. Commissioner, T.C. Memo. 1994-438. We conclude that a reasonably prudent taxpayer in petitioner's position, at the time of signing the return, could not be expected to know about the

understatement of tax or that further investigation was warranted. Petitioner has satisfied the section 6015(b)(1)(C) requirement.

The final question is whether, taking into account all the facts and circumstances, it would be inequitable to hold petitioner liable for the deficiency attributable to the understatement on the joint 1983 tax return. Sec. 6015(b)(1)(D).

Respondent argues that it would not be inequitable for petitioner to be held liable for the understatement on the joint 1983 tax return because title to the remaining condominiums was transferred in 1997 to her name alone. The Hendrickses acquired the condominiums before Mr. Hendricks invested in Boulder Oil and Gas. The condominiums were acquired by exchanging other property the Hendrickses had previously owned and were not acquired from proceeds made available through the investment in Boulder Oil and Gas. Mr. Hendricks transferred his joint interest in the remaining condominiums to petitioner nearly 3 years before respondent assessed the deficiency for 1983 and began collection action against the Hendrickses for that tax year. The Hendrickses had paid the balances due for 1980-82 with moneys, derived in part, from the sale of several of the condominiums, and the Hendrickses mistakenly believed that they had settled the 1983 tax year and did not owe any more tax liabilities.

Mr. Hendricks and Mr. Angeli testified at trial that the risks associated with the substantial farming enterprise with which Mr. Hendricks was engaged at the time were what motivated the transfer of the remaining condominiums.  Petitioner was not involved in the farming enterprise, and the Hendrickses wanted to protect their investment in the remaining condominiums because they constituted the Hendrickses' only financial resource for their retirement outside of Social Security.  Furthermore, despite the lack of success with the farming enterprise, Mr. Hendricks paid all of his debts from the farming enterprise.

There is nothing in the record to indicate that the Hendrickses' standard of living increased in comparison to their standard of living in prior years.  Their lifestyle was not lavish, and they made no unusual expenditures.  We find that petitioner did not significantly benefit from the deduction attributable to Mr. Hendricks's investment in Boulder Oil and Gas.  See Hayman v. Commissioner, supra; Jonson v. Commissioner, 118 T.C. 106 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).

As retirees, the Hendrickses rely on the Social Security checks they receive monthly and depend upon the rents from the remaining condominiums for income.  Their current monthly living expenses exceed their income by about $1,100.  They are able to meet their living expenses only through financial assistance from their children.  We conclude that petitioner would experience

considerable economic hardship if relief from the liabilities were not granted, given the Hendrickses' current level of income and assets.  See Ewing v. Commissioner, 122 T.C. 32, 47 (2004).

We also consider the fact that the Hendrickses have made a good faith effort to comply with Federal income tax laws in the tax years following 1983.  Except for the years they reported loss activity from Boulder Oil and Gas, i.e., 1980-83, the Hendrickses neither have had their Federal tax returns examined, nor have they had taxes in excess of the amount reported on their returns assessed.  Furthermore, the Hendrickses have made an honest attempt to pay their tax liabilities when they were able and did so as quickly as possible.  The Hendrickses paid in full the balances due for 1980-82 by the end of 1993, and have already paid more than $110,000 toward the balance due for 1983, $63,176 of which represents the underpayment attributable to Mr. Hendricks's investment in Boulder Oil and Gas.

Considering that petitioner did not receive significant benefit from the understatements, that petitioner would suffer considerable economic hardship if relief were denied, and that the Hendrickses have complied with Federal tax laws at least since 1983, we conclude that on the basis of all the facts and circumstances it would be inequitable to hold petitioner liable for the understatement of tax for 1983.  Petitioner has satisfied the section 6015(b)(1)(D) requirement.

In summary, we find that petitioner has established:  (1) In signing the joint 1983 tax return, she did not know nor did she have reason to know of the understatement; and (2) taking into account all the facts and circumstances, it would be inequitable to hold petitioner liable for the resulting deficiency. Petitioner has met all the requirements of section 6015(b), and she is entitled to relief from joint and several tax liability as to 1983.

To reflect the foregoing,

<u>An appropriate decision</u>

<u>will be entered</u>.