130 T.C. No. 10

UNITED STATES TAX COURT

SUZANNE L. PORTER, a.k.a. SUZANNE L. HOLMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13558-06.                    Filed May 15, 2008.

R denied P's application for relief from joint
income tax liability under sec. 6015, I.R.C.  P
petitioned this Court to seek our determination whether
she is entitled to relief under sec. 6015(f), I.R.C.  R
filed a motion in limine to preclude P from introducing
at trial any evidence, documentary or testimonial,
which was not available to R during the administrative
process.  R urges us to reconsider our holding in <u>Ewing
v. Commissioner</u>, 122 T.C. 32 (2004), vacated on
unrelated jurisdictional grounds 439 F.3d 1009 (9th
Cir. 2006).

<u>Held</u>:  We will continue to follow our holding in
<u>Ewing v. Commissioner</u>, 122 T.C. 32 (2004).  Therefore,
our determination whether P is entitled to relief under
sec. 6015(f), I.R.C., is made in a trial de novo and we
may consider evidence introduced at trial which was not
included in the administrative record.

*Held*, *further*:  R's motion in limine will be denied.

Suzanne L. Porter, a.k.a. Suzanne L. Holman, pro se.

Kelly R. Morrison-Lee and Ann M. Welhaf, for respondent.

HAINES, *Judge*:  The issue for decision is whether in determining petitioner's eligibility for relief under section 6015(f) we may consider evidence introduced at trial which was not included in the administrative record.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the exhibits attached thereto, and the stipulation of settled issues are incorporated herein by this reference.  At the time she filed her petition, petitioner resided in Silver Spring, Maryland.

Petitioner and her husband (Mr. Porter) filed a joint Form 1040, U.S. Individual Income Tax Return, for 2003 (2003 return). Mr. Porter prepared the 2003 return.  On April 21, 2004, 6 days

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code, as amended.  Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

after petitioner signed the 2003 return, she and Mr. Porter legally separated.[2]

On June 20, 2005, respondent issued petitioner and Mr. Porter a statutory notice of deficiency for 2003. Neither petitioner nor Mr. Porter petitioned this Court for redetermination of the deficiency.

On December 1, 2005, petitioner submitted a Form 8857, Request for Innocent Spouse Relief. In a June 14, 2006, final determination, respondent's Appeals officer determined that pursuant to section 6015(c) petitioner was entitled to relief from joint and several liability with respect to the income tax on $12,765 of unreported employee compensation Mr. Porter received in 2003, but denied relief under section 6015(b), (c), and (f) from the 10-percent additional tax of $1,070 imposed by section 72(t) on an IRA distribution of $10,700 reported on the 2003 return. The parties stipulated that petitioner does not qualify for relief from joint and several liability on the 10-percent additional tax under section 6015(b) or (c).

Respondent filed a motion in limine to preclude petitioner from introducing any evidence, documentary or testimonial, which was not available to respondent during the administrative process. The Court took the motion under advisement and

---

[2]A Judgment of Absolute Divorce was entered on May 16, 2006.

permitted petitioner to testify and introduce evidence subject to its ruling on the motion in limine.

OPINION

A.   Respondent's Position and Background

Respondent contends that, pursuant to the Administrative Procedure Act (APA), 5 U.S.C. secs. 551-559, 701-706 (2000), and cases decided thereunder, this Court may consider only the administrative record (the record rule) in making our determination in this case.  See Camp v. Pitts, 411 U.S. 138, 142 (1973); United States v. Carlo Bianchi & Co., 373 U.S. 709, 715 (1963).  We first stated our position on that issue in Ewing v. Commissioner, 122 T.C. 32 (2004).  Respondent urges us to reconsider our position since the U.S. Court of Appeals for the Ninth Circuit vacated our decision in Ewing on jurisdictional grounds.  See Commissioner v. Ewing, 439 F.3d 1009 (9th Cir. 2006), revg. 118 T.C. 494 (2002), vacating 122 T.C. 32 (2004). However, Congress subsequently confirmed our jurisdiction to determine the appropriate relief available to a taxpayer under section 6015(f) with respect to tax liability remaining unpaid on or after December 20, 2006.  Sec. 6015(e)(1)(A); Tax Relief and Healthcare Act of 2006, Pub. L. 109-432, div. C, sec. 408, 120 Stat. 3061.

In Ewing v. Commissioner, 122 T.C. at 44, we held that our determination of whether a taxpayer is entitled to relief under

section 6015(f) "is made in a trial de novo and is not limited to matter contained in respondent's administrative record". Respondent raises many of the same arguments we considered in Ewing. Consequently, our discussion of this issue draws heavily on the reasoning of the majority opinion in Ewing as well as the reasoning of Judge Thornton's concurrence. See id. at 50. For the reasons stated more fully herein, we hold that in determining whether a taxpayer is eligible for relief under section 6015(f) we may consider evidence introduced at trial which was not included in the administrative record.

B.    The Applicability of the APA Judicial Review Provisions
      to Tax Court Proceedings Under Section 6015

Since its enactment in 1946 the APA has generally not governed proceedings in this Court (or in its predecessor, the Board of Tax Appeals). See Ewing v. Commissioner, 122 T.C. at 50 (Thornton, J., concurring). The U.S. Court of Appeals for the Fourth Circuit, the Court to which an appeal in this case would lie, has held that "The Tax Court * * * is a court in which the facts are triable de novo" and "the Tax Court is not subject to the Administrative Procedure Act." O'Dwyer v. Commissioner, 266 F.2d 575, 580 (4th Cir. 1959), affg. 28 T.C. 698 (1957). This long-established practice comports with the provisions of the APA and its history. Ewing v. Commissioner, 122 T.C. at 50 (Thornton, J., concurring).

As a statute of general application, the APA does not supersede specific statutory provisions for judicial review. Id. "When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies."[3] Bowen v. Massachusetts, 487 U.S. 879, 903 (1988).

The Code has long provided a specific statutory framework for reviewing deficiency determinations of the Internal Revenue Service. Secs. 6213 and 6214; Ewing v. Commissioner, 122 T.C. at 52 (Thornton, J., concurring). Section 6015 is part and

---

[3]Applying these principles, the U.S. Court of Appeals for the Fifth Circuit has indicated that the APA is not an appropriate vehicle for challenging the Commissioner's denial of a request to abate interest under sec. 6404. See Beall v. United States, 336 F.3d 419, 427 n.9 (5th Cir. 2003) ("review under the APA is accordingly available only where 'there is no other adequate remedy in a court.'" (quoting 5 U.S.C. sec. 704)). Similarly, in an unpublished opinion involving the validity of the Commissioner's issuance of a notice of deficiency, the U.S. Court of Appeals for the Seventh Circuit concluded: "The APA is irrelevant, however, because the IRS's issuance of a notice of tax deficiency and the Tax Court's review of it are governed by the Internal Revenue Code and the rules and procedures of the Tax Court * * * and not by the APA." Bratcher v. Commissioner, 116 F.3d 1482 (7th Cir. 1997), affg. without published opinion T.C. Memo. 1996-252; see also Poirier v. Commissioner, 299 F. Supp. 465, 466 (E.D. La. 1969) (rejecting taxpayer's claim that review to restrain enforcement of IRS summons is governed by APA secs. 703 and 704 because secs. 7602 and 7604 and Reisman v. Caplin, 375 U.S. 440, 443 (1964), "[provide] an adequate remedy").

parcel of the same statutory framework. Our de novo review procedures emanate from that statutory framework.

Our jurisdiction under section 6015 is couched in language similar to that of our deficiency jurisdiction under sections 6213 and 6214. Section 6015(e)(1)(A) authorizes this Court to "determine" the appropriate relief available under section 6015. Section 6213(a) provides that taxpayers who receive a notice of deficiency may petition this Court for a "redetermination" of the deficiency. Section 6214(a) provides this Court jurisdiction to "redetermine" the amount of the deficiency.

Congress first granted the Board of Tax Appeals (the predecessor to the Tax Court) jurisdiction to "redetermine" deficiencies and additions to tax in 1924. Ewing v. Commissioner, 122 T.C. at 38. Since 1926 we have also had jurisdiction to "determine" overpayments. Id. These determinations and redeterminations have always been made de novo. O'Dwyer v. Commissioner, supra at 580; Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327-328 (1974); see Clapp v. Commissioner, 875 F.2d 1396, 1403 (9th Cir. 1989); Raheja v. Commissioner, 725 F.2d 64, 66 (7th Cir. 1984), affg. T.C. Memo. 1981-690; Jones v. Commissioner, 97 T.C. 7, 18 (1991). Congress has defined the jurisdiction of this Court using the

words "determine" and "redetermination".[4]  Ewing v. Commissioner,
122 T.C. at 38.  We see no material difference between
"determine" in section 6015(e), "determine" in section 6512(b),
and "redetermination" in section 6213(a) for purposes of this
discussion.  Id.

We can presume that in 1998 when Congress chose to use the
word "determine" in section 6015, it did so in full awareness of
our long history of de novo review.[5]  If Congress includes
language from a prior statute in a new statute, courts can
presume that Congress intended the longstanding legal
interpretation of that language to be applied to the new statute.
Commissioner v. Estate of Noel, 380 U.S. 678, 680-681 (1965);
United States v. 101.80 Acres, 716 F.2d 714, 721 (9th Cir. 1983).
The use of the word "determine" in section 6015(e)(1)(A) suggests

---

[4]As another example, sec. 6404 authorizes this Court to
"determine" whether the Secretary's refusal to abate interest was
an abuse of discretion.  Our practice has been to make our
determination after providing an opportunity for a trial de novo.
See, e.g., Goettee v. Commissioner, T.C. Memo. 2003-43, affd. 192
Fed. Appx. 212 (4th Cir. 2006); Jean v. Commissioner, T.C. Memo.
2002-256; Jacobs v. Commissioner, T.C. Memo. 2000-123.

[5]There are other situations besides the redetermination of
deficiencies in which we make determinations de novo.  For
example, sec. 7436(a) provides that the Tax Court may "determine"
whether the Commissioner's determination regarding an
individual's employment status is correct.  The legislative
history shows that Congress intended for us to conduct a trial de
novo with respect to our determinations regarding employment
status.  See H. Rept. 105-148, at 639 (1997), 1997-4 C.B. (Vol.
1) 319, 961; S. Rept. 105-33, at 304 (1997), 1997-4 C.B. (Vol. 2)
1067, 1384; H. Conf. Rept. 105-220, at 734 (1997), 1997-4 C.B.
(Vol. 2) 1457, 2204.

that Congress intended that we conduct trials de novo in making our determinations under section 6015(f).

C.     The Eighth Circuit Decision in Robinette v. Commissioner Does Not Govern the Decision in This Case

Respondent argues that pursuant to the Court of Appeals for the Eighth Circuit's decision in Robinette v. Commissioner, 439 F.3d 455 (8th Cir. 2006), revg. 123 T.C. 85 (2004), our review is limited to the administrative record. We disagree.

Robinette involved a claim under section 6330, not section 6015(f). We held that the APA was not applicable to our review of the Commissioner's determinations under section 6330. The Court of Appeals reversed. The Court of Appeals' opinion in Robinette, a case brought under section 6330, is distinguishable from the current case brought under section 6015.[6] Whereas section 6015 provides that we "determine" whether the taxpayer is entitled to relief, section 6330(d) provides for judicial review of the Commissioner's determination by allowing the taxpayer to "appeal such determination to the Tax Court" and vesting the Tax Court with "jurisdiction with respect to such matter". As discussed above, the use of the word "determine" suggests that we conduct a trial de novo. That Congress chose not to use the word "determine" or some derivation thereof in section 6330(d)

---

[6]No inference should be drawn that, by distinguishing Robinette v. Commissioner, 439 F.3d 455 (8th Cir. 2006), we are changing our position in lien and levy cases as expressed in 123 T.C. 85 (2004).

distinguishes <u>Robinette v. Commissioner</u>, 439 F.3d 455 (8th Cir. 2006), from cases arising under section 6015.

D.    <u>The Scope of Review in Other Areas of Our Jurisdiction</u>

We have jurisdiction to issue declaratory judgments relating to the status, qualification, valuation, or classification of certain section 501(c)(3) organizations, retirement plans, gifts, governmental obligations, and installment payments under section 6166.  Secs. 7428, 7476, 7477, 7478, 7479.  In contrast to section 6015, none of those sections authorizes us to make a determination; instead, those sections authorize this Court, after the Commissioner has made a determination, to make a declaration with respect to the matter.  Our Rules regarding declaratory judgments generally require these actions to be disposed of on the basis of the administrative record.[7]  See Rule 217(a).  The reason for this limited review lies in Congress's legislative directive that "The court is to base its determination upon the reasons provided by the Internal Revenue Service in its notice to the party making the request for a determination, or based upon any new matter which the Service may wish to introduce at the time of trial."  H. Rept. 93-807, at 108

---

[7]Our Rules relating to declaratory judgment cases provide for consideration under various circumstances of evidence not in the administrative record.  See <u>Ewing v. Commissioner</u>, 122 T.C. at 39 n.7.

(1974), 1974-3 C.B. (Supp.) 236, 343; see Rule 217(a), Explanatory Note, 68 T.C. 1048.

Congress, in full awareness of our history of de novo review, did not impose a similarly restrictive standard on our review of the Commissioner's determinations under section 6015. Ewing v. Commissioner, 122 T.C. at 55 (Thornton, J., concurring). Unlike the statutes providing our jurisdiction to issue declaratory judgments, nothing in section 6015 or its legislative history indicates that the APA is to apply to section 6015 cases or that we are to restrict our review to the administrative record. Id. Section 6015 expanded the Court's jurisdiction to review all denials of relief from joint and several liability. Id. As described in the conference report, the House bill "specifically provides that the Tax Court has jurisdiction to review any denial of innocent spouse relief." H. Conf. Rept. 105-599, at 250 (1998), 1998-3 C.B. 747, 1004. Similarly, under the Senate amendment, "The Tax Court has jurisdiction of disputes arising from the separate liability election." Id. at 251, 1998-3 C.B. at 1005. The conference agreement "follows the House bill and the Senate amendment in establishing jurisdiction in the Tax Court over disputes arising in this area." Id.

That section 6015 postdates the APA does not render the APA judicial review procedures applicable here. Ewing v. Commissioner, 122 T.C. at 52 (Thornton, J., concurring). APA

section 559 provides that the APA does "not limit or repeal additional requirements imposed by statute or otherwise recognized by law."  5 U.S.C. sec. 559 (2000).  When the APA was enacted in 1946, this Court's de novo procedures for reviewing IRS functions were well established and "recognized by law" within the meaning of APA section 559.[8]  See Ewing v. Commissioner, 122 T.C. at 38.  These de novo trial procedures, which have remained essentially unchanged since the APA's enactment, provide a stricter scope of review of the Commissioner's determinations than would obtain under APA review procedures.  Ewing v. Commissioner, 122 T.C. at 52-53 (Thornton, J., concurring).  Consequently, pursuant to APA section 559, the

---

[8]When the APA was enacted, this Court had jurisdiction not only to redetermine deficiencies, but also to determine certain overpayments, to redetermine excessive profits on defense contracts as previously determined by the Secretary, and to hear claims for refunds of processing taxes; all these matters were reviewed de novo.  See Revenue Act of 1943, ch. 63, sec. 701(e), 58 Stat. 86 (excessive profits); Revenue Act of 1942, ch. 619, secs. 504, 510(b), 56 Stat. 957, 967 (refunds of processing taxes); Revenue Act of 1926, ch. 27, sec. 284(e), 44 Stat. (Part 2) 67 (overpayments); Revenue Act of 1924, ch. 234, sec. 274, 43 Stat. 297 (deficiencies).

APA does not limit or repeal our de novo review procedures.[9]  Id.
at 53 (Thornton, J., concurring).

E.    Abuse of Discretion and De Novo Review

We have reviewed the Commissioner's denial of relief in
cases arising under section 6015(f) for abuse of discretion.[10]
Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d
1181 (10th Cir. 2003); Van Arsdalen v. Commissioner, T.C. Memo.
2007-48.  Review for abuse of discretion does not trigger
application of the APA record rule or preclude us from conducting
a de novo trial.  Ewing v. Commissioner, 122 T.C. at 40.  Our
longstanding practice has been to hold trials de novo in many
situations where an abuse of discretion standard applies.  In

---

[9]The legislative history of the APA confirms this
understanding.  See S. Comm. on the Judiciary, 79th Cong., 1st
Sess., Administrative Procedure Act (Comm. Print 1945), reprinted
in Administrative Procedure Act Legislative History, 1944-46, at
22 (1946) (stating that there are exempted from APA formal
adjudication requirements matters that are subject to de novo
review of facts and law such "as the tax functions of the Bureau
of Internal Revenue (which are triable de novo in The Tax
Court)"; S. Rept. 752, 79th Cong., 1st Sess. (1945), reprinted
in Administrative Procedure Act Legislative History, 1944-46, at
214 (1946) (explaining that pursuant to APA provisions governing
the scope of judicial review, courts establish facts de novo
where the agency adjudication is not subject to APA formal
adjudication provisions "such as tax assessments * * * not made
upon an administrative hearing and record, [where] contests may
involve a trial of the facts in the Tax Court"); H. Rept. 1980,
79th Cong., 2d Sess. (1946), reprinted in Administrative
Procedure Act Legislative History, 1944-46, at 279 (1946) (same).

[10]In deciding respondent's motion in limine relating to our
scope of review, we need not decide any issue relating to the
standard of review.  Our determination of the proper scope of
review does not depend on the standard of review applied.

those cases, our practice has not been to limit taxpayers to evidence contained in the administrative record or arguments made by the taxpayer at the administrative level.

Examples of actions in which we conduct a trial de novo include those where we must decide whether it was an abuse of discretion for the Commissioner to (1) determine that a taxpayer's method of accounting did not clearly reflect income under section 446, e.g., Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 533 (1979) (Supreme Court used Tax Court findings in making its determination); Mulholland v. United States, 25 Cl. Ct. 748 (1992); (2) reallocate income or deductions under section 482, e.g., Bausch & Lomb, Inc. v. Commissioner, 933 F.2d 1084, 1088 (2d Cir. 1991) (U.S. Court of Appeals for the Second Circuit implicitly approved our de novo consideration of section 482 reallocations), affg. 92 T.C. 525 (1989); (3) fail to waive penalties and additions to tax, e.g., Krause v. Commissioner, 99 T.C. 132, 179 (1992) (based in part on the Commissioner's expert's testimony that taxpayers were influenced by energy crisis to invest in energy partnerships, failure to waive the addition to tax for underpayment attributable to valuation overstatement under section 6659(e) was an abuse of discretion), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994); (4) refuse to abate interest under section 6404, e.g., Goettee v. Commissioner, T.C. Memo. 2003-43, affd. 192 Fed.

Appx. 212 (4th Cir. 2006); Jean v. Commissioner, T.C. Memo. 2002-256; Jacobs v. Commissioner, T.C. Memo. 2000-123; (5) refuse to grant the taxpayer's request for an extension of time to file, e.g., Estate of Proios v. Commissioner, T.C. Memo. 1994-442 (taxpayer's failure to call witnesses held against the taxpayer); and (6) disallow a bad debt reserve deduction, e.g., Newlin Mach. Corp. v. Commissioner, 28 T.C. 837, 845 (1957) (testimony and evidence considered). We are aware of no reason to depart from this longstanding practice in making our determination under section 6015(f).[11]

F.   Neither Magana v. Commissioner nor Giamelli v. Commissioner Governs This Case

Respondent contends that under Magana v. Commissioner, 118 T.C. 488 (2002), we may not consider facts or issues that were not previously raised by the taxpayer during the Commissioner's consideration of the taxpayer's request for relief under section 6015(f). In Magana v. Commissioner, supra at 493, a case in which we reviewed the Commissioner's determination under section 6330(d)(1) that tax lien filings were appropriate, we held that,

---

[11]This is not to say, however, that we could not or should not, in appropriate circumstances, borrow principles of judicial review embodied in the APA. See Dittler Bros., Inc. v. Commissioner, 72 T.C. 896, 909 (1979) (this Court looked to APA caselaw in adopting a "substantial evidence" rule as the appropriate measure for reviewing the reasonableness of the Commissioner's determination as to tax avoidance in a declaratory judgment action arising under former sec. 7477), affd. without published opinion 642 F.2d 1211 (5th Cir. 1981).

absent special circumstances, the taxpayer could not raise before this Court an issue he had not raised in a hearing conducted by the Commissioner's Appeals Officer under section 6330(b). See also Giamelli v. Commissioner, 129 T.C. 107 (2007).

Neither Magana nor Giamelli applies here. See Ewing v. Commissioner, 122 T.C. at 41. First, in Magana v. Commissioner, supra at 494 n.3, we said we were not deciding whether our holding therein applies to claims for relief from joint liability under section 6015 raised in a collection proceeding under section 6330. In Giamelli, we did not extend our holding to claims under section 6015. Second, we did not say in Magana or Giamelli that the taxpayer would be limited to the administrative record or that the taxpayer may not offer evidence in the proceeding in this Court. Third, in neither Magana nor Giamelli did we discuss the APA or the record rule. Thus, Magana and Giamelli do not govern here.

G.  Our Adoption of Respondent's Position Would Lead to Inconsistent Procedures in Similar Cases

Adoption of respondent's position would lead to the anomaly of proceedings in some section 6015(f) cases on the basis of the Commissioner's administrative record and in other such cases on the basis of trials de novo. See Ewing v. Commissioner, 122 T.C. at 42. Consider two examples.

First, we have jurisdiction to make a determination if a taxpayer petitions this Court 6 months after filing an election

for section 6015 relief and the Commissioner has made no determination granting or denying relief. Sec. 6015(e)(1)(A)(i)(II); Ewing v. Commissioner, 122 T.C. at 42. A trial de novo would be necessary and is clearly authorized in this situation; there may be only a skeletal administrative record. Second, in a deficiency case we hold a trial de novo relating to a taxpayer's affirmative defense that he or she is entitled to innocent spouse relief under section 6015(f). Adoption of respondent's position would cause us to apply different procedures in our determinations in cases under section 6015. See Ewing v. Commissioner, 122 T.C. at 42. We believe that cases in which the taxpayer seeks relief under section 6015(f) should receive similar treatment and, thus, the same scope of review.

The nonrequesting spouse may intervene in the proceeding in which we determine whether the requesting spouse qualifies for relief under section 6015(f). Sec. 6015(e)(4). Intervention by the nonrequesting spouse is available both in deficiency cases in which section 6015 relief is requested and in stand-alone case such as this case. Rule 325; Ewing v. Commissioner, 122 T.C. at 43; King v. Commissioner, 115 T.C. 118, 122-123 (2000); Corson v. Commissioner, 114 T.C. 354, 365 (2000). That Congress provided for intervention by nonrequesting spouses suggests Congress intended that we conduct trials de novo under section 6015(f) to

permit the intervenor an opportunity to offer evidence relating to the requesting spouse's entitlement to relief. See <u>Ewing v. Commissioner</u>, 122 T.C. at 43.

H. <u>Conclusion</u>

We read section 6015(e) and (f) to give effect to both. <u>Ewing v. Commissioner</u>, 122 T.C. at 43. Our de novo review of the Commissioner's determinations under section 6015(f) gives effect to the congressional mandate that we determine whether a taxpayer is entitled to relief under section 6015. The measure of deference provided by the abuse of discretion standard is a proper response to the fact that section 6015(f) authorizes the Secretary to provide procedures under which, on the basis of all the facts and circumstances, the Secretary may relieve a taxpayer from joint liability. That approach (de novo review, applying an abuse of discretion standard) properly implements the statutory provisions at issue here and has a long history in numerous other areas of Tax Court jurisprudence.

To reflect the foregoing,

<u>An order will be issued denying respondent's motion in limine</u>.

Reviewed by the Court.

COLVIN, COHEN, SWIFT, WELLS, FOLEY, VASQUEZ, GALE, THORNTON, MARVEL, GOEKE, and WHERRY, <u>JJ</u>., agree with this majority opinion.

VASQUEZ, J., concurring:  I agree with the majority opinion and write separately to clarify the confusion that exists between the terms "scope of review" and "standard of review".

It is important to distinguish between two separate concepts:  scope of review and standard of review.  The scope of judicial review refers merely to the evidence the reviewing court will examine in reviewing an agency decision; the standard of judicial review refers to how the reviewing court will examine that evidence.  See Franklin Sav. Association v. Dir., Office of Thrift Supervision, 934 F.2d 1127, 1136 (10th Cir. 1991).

In Robinette v. Commissioner, 439 F.3d 455, 460 (8th Cir. 2006), revg. 123 T.C. 85 (2004), the U.S. Court of Appeals for the Eighth Circuit stated:  "The agreed-upon standard of review [abuse of discretion] itself implies that review is limited to the administrative record".  To support this conclusion, the Court of Appeals relied on Living Care Alt. of Utica, Inc. v. United States, 411 F.3d 621 (6th Cir. 2005).  See Robinette v. Commissioner, supra at 458-459.  Living Care, however, dealt with the standard of review (abuse of discretion) and not the scope of review (de novo or the administrative record).

With all due respect to the Court of Appeals for the Eighth Circuit, I believe it is incorrect to conclude when the standard of review is "abuse of discretion" that a fortiori our scope of review is limited to the administrative record.  See majority op.

pp. 13-14 (listing numerous instances where the <u>standard</u> of review the Court applies is "abuse of discretion" but where the <u>scope</u> of our review is not limited to the administrative record-- i.e., we conduct trials de novo and receive evidence in accordance with Rule 143 and section 7453).

SWIFT and WELLS, <u>JJ</u>., agree with this concurring opinion.

THORNTON, J., concurring:  I agree with the majority opinion
and write separately to offer additional historical perspective.

A.   Status of the Tax Court Under the APA

When the APA was enacted in 1946, the Tax Court of the
United States was an agency of the executive branch.  In
substance, however, it functioned as a court.  Consequently, for
over two decades after the APA's enactment, there was uncertainty
as to whether or how the APA should apply to the Tax Court.[1]
Partly to resolve that question, in 1969 the United States Tax
Court, as it was newly renamed, was formally incorporated into
the judiciary as an Article I court.  Tax Reform Act of 1969,

_____

[1] During consideration of the APA, at the request of the
Chairman of the Senate Judiciary Committee, the Attorney General
commented on various aspects of the legislation.  In his
statement, which was later appended to the Senate report, the
Attorney General opined that for purposes of the APA the term
"Courts" included the Tax Court and that consequently the APA did
not apply to its procedures.  S. Rept. 752, 79th Cong., 1st Sess.
(1945), reprinted in Administrative Procedure Act Legislative
History, 1944-1946, at 224.  Notwithstanding this authority,
contemporary commentators disagreed over whether the APA applied
to the Tax Court.  Compare Note, "Effect of the Administrative
Procedure Act on Decisions of the Tax Court", 2 Tax L. Rev. 103
(1946) (concluding that the APA applied to the Tax Court), with
Gordon, "Reviewability of Tax Court Decisions", 2 Tax L. Rev. 171
(1947) (concluding that the APA did not apply to the Tax Court).
There developed a split in the circuits as to whether the Tax
Court was to be considered an agency so as to be subject to the
provisions of the APA governing agency adjudications.  Compare
Kennedy Name Plate Co. v. Commissioner, 170 F.2d 196 (9th Cir.
1948), affg. a Memorandum Opinion of this Court, and Anderson v.
Commissioner, 164 F.2d 870 (7th Cir. 1947), affg. 5 T.C. 443
(1945) (both holding that the APA provisions did not apply to the
Tax Court), with Lincoln Elec. Co. v. Commissioner, 162 F.2d 379,
382 (6th Cir. 1947) (holding that review of Tax Court decisions
was governed by the APA), revg. 6 T.C. 37 (1946).

Pub. L. 91-172, secs. 951-962, 83 Stat. 730.  Since then, it has been clear that this Court is not subject to the APA rules that govern agency adjudications.

Similarly, the APA has never affected this Court's long-established practice of conducting trials de novo in deficiency actions and most other actions, including those involving claims for relief from joint and several liability.  The explanation for this well-established practice lies largely in the history of the Tax Court and of the APA.

B.   Historical Roots of De Novo Review in the Tax Court

The precursor of the Tax Court, the Committee on Appeals and Review (the Committee), was part of the Bureau of Internal Revenue.  Dubroff, The United States Tax Court:  An Historical Analysis 39 (1979).  This Committee was not a fact finder; instead, it operated under its own version of a record rule. "The taxpayer was generally permitted to introduce evidence to the Committee only in affidavit or documentary form and could not adduce evidence that had not been considered by the Income Tax Unit."  Id. at 42.

Pressures to replace the Committee resulted largely from two factors:  (1) The Committee was not independent of the Bureau of Internal Revenue; and (2) the proceedings in the Committee were not adversary, were not public, and did not permit the introduction of new evidence.  Id. at 44.  To address these

concerns, the Revenue Act of 1924, ch. 234, 43 Stat. 253, replaced the Committee with the Board of Tax Appeals (the Board). Originally, the Administration had proposed that the Board be created as an informal hearing body within Treasury. Dubroff, supra at 111. Under the original Administration proposal, the Board was to consider its cases "on the basis of Bureau files. Since under the proposal the Board was to be a part of Treasury, there was no impediment to access by the Board to Bureau files." Id. at 91.

In the 1924 legislation, Congress changed this plan to make the Board an independent agency in the executive branch; it was generally required to follow formal judicial procedures. Id. at 111. Moreover, the Board's record had to be independently compiled. Id. at 95. "Thus, the Board stressed that '[w]hat has been submitted to or considered by the Bureau of Internal Revenue is beyond the ken of this Board . . . . [E]vidence that has been presented before any other department of the Government must be reintroduced before this Board before we can consider it.'" Id. (quoting Lyon v. Commissioner, 1 B.T.A. 378, 379 (1925)).

The Revenue Act of 1924 left the resolution of most procedural and evidentiary issues to the discretion of the Board. Dubroff, supra at 151. In adopting judicial standards for the receipt of evidence, the Board chose to follow the liberal rules of evidence applicable in equity proceedings in the District of

Columbia, where most of its cases were tried. Id. at 153-154. In 1926 this evidentiary rule was codified. Revenue Act of 1926, ch. 27, sec. 1000, 44 Stat. 105. Essentially the same provision survives today in section 7453.

In 1942 the Board of Tax Appeals was renamed the Tax Court of the United States. This name change did not significantly affect the jurisdiction, powers, or duties that previously had belonged to the Board. Dubroff, supra at 182.

In sum, when the APA was enacted in 1946, de novo trials in the deficiency actions and various other matters within the Tax Court's jurisdiction were well-established practice and fundamental to this Court's reason for existence. Similarly, it was well-established practice in Federal District Courts to conduct trials de novo in tax refund cases. See, e.g., Lewis v. Reynolds, 284 U.S. 281, 283 (1932).

C. Legislative History of the APA

In enacting the APA Congress expressly recognized that tax matters were the subject of de novo proceedings in the courts. APA section 554, which defines the procedures that generally govern agency adjudications, applies only in the case of an "adjudication required by statute to be determined on the record after opportunity for an agency hearing"; it excepts all matters that are "subject to a subsequent trial of the law and of the facts de novo in a court". The associated legislative history

states:  "The exception of matters subject to a subsequent trial of the law and the facts <u>de novo</u> in any court exempts such matters as the tax functions of the Bureau of Internal Revenue (which are triable <u>de novo</u> in the Tax Court)".  S. Comm. on the Judiciary, 79th Cong., 1st Sess., Administrative Procedure Act (Comm. Print 1945), reprinted in Administrative Procedure Act Legislative History, 1944-1946, at 22 (1946).[2]

As a corollary to these APA provisions regarding agency adjudications, APA section 706 expressly contemplates that certain types of agency actions will be subject to de novo judicial review.  In particular, APA section 706(2)(F) provides that the "reviewing court" shall "hold unlawful and set aside agency action, findings, and conclusions found to be * * * unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court."  Although the statute does not otherwise specify the types of cases in which the facts are to be "subject to trial de novo", the legislative history illuminates

---

[2] The Senate and House reports explain this provision in identical terms, noting that it is one of several exceptions affecting "even adjudications otherwise required by statute to be made after hearing.  The first [exception], where the adjudication is subject to a judicial trial de novo, is included because whatever judgment the agency makes is effective only in a prima facie sense at most and the party aggrieved is entitled to complete judicial retrial and decision."  S. Rept. 752, 79th Cong., 1st Sess. (1945), reprinted in Administrative Procedure Act Legislative History, 1944-1946, at 202 (1946); H. Rept. 1980, 79th Cong., 2d Sess. (1946), reprinted in Administrative Procedure Act Legislative History, 1944-1946, at 260 (1946).

this matter.  The Senate and House reports state identically:
"Thus, where adjudications such as tax assessments are not made
upon an administrative hearing and record, contests may involve a
trial of the facts in the Tax Court or the United States District
Courts."  S. Rept. 752, 79th Cong., 1st Sess. (1945), reprinted in
Administrative Procedure Act Legislative History, 1944-1946, at
214 (1946); H. Rept. 1980, 79th Cong., 2d Sess. (1946), reprinted
in Administrative Procedure Act Legislative History, 1944-1946, at
279 (1946).

D.   De Novo Review in Deficiency Actions

Consistent with this legislative history, the courts have
uniformly held that deficiency proceedings in the Tax Court are de
novo and not governed by the APA.  In O'Dwyer v. Commissioner, 266
F.2d 575, 580 (4th Cir. 1959), affg. 28 T.C. 698 (1957), the Court
of Appeals for the Fourth Circuit stated:

> The Tax Court is given jurisdiction to redetermine the
> deficiency asserted by the Commissioner, and in doing so
> it is empowered to prescribe rules of practice and
> procedure and is required to apply the rules of evidence
> applicable to nonjury trials in the United States Court
> of the District of Columbia and make findings of fact
> upon such evidence.  Secs. 6213, 7453 and 7459, Internal
> Revenue Code of 1954 * * * .  The Tax Court thus renders
> its decision only upon the evidence produced before it.
> * * *
>
> The Tax Court, rather than being a "reviewing
> court", within the meaning of Sec. 10(e) [the APA
> provision governing scope of judicial review] reviewing
> the "record", is a court in which the facts are triable
> de novo * * *.  We agree that the Tax Court is not
> subject to the Administrative Procedure Act.

In a more recent unpublished opinion, the Court of Appeals for the Ninth Circuit reached the same conclusion. Sharon v. Commissioner, 1991 U.S. App. LEXIS 31395, 1992 WL 8190 (9th Cir. 1992), affg. without published opinion T.C. Memo. 1990-604. The Court of Appeals cited Clapp v. Commissioner, 875 F.2d 1396, 1403 (9th Cir. 1989), which states:

> The Tax Court has as its purpose the redetermination of deficiencies, through a trial on the merits, following a taxpayer petition. It exercises de novo review. * * *
>
> * * * * * * *
>
> The courts carefully review administrative action for arbitrariness when an agency exercises final, statutory decisionmaking authority, such as an agency rulemaking. In tax cases such as this, the Tax Court or United States District Court review the Commissioner's decision on the merits de novo. Too detailed a substantive review of the Commissioner's threshold "determination", undertaken solely for purposes of exercising subject matter jurisdiction would be duplicative and burdensome on the courts and the Commissioner.

Similarly, in an unpublished opinion involving the validity of the Commissioner's issuance of a notice of deficiency, the Court of Appeals for the Seventh Circuit concluded: "The APA is irrelevant, however, because the IRS's issuance of a notice of tax deficiency and the Tax Court's review of it are governed by the Internal Revenue Code and the rules and procedures of the Tax Court * * * and not by the APA." Bratcher v. Commissioner, 116 F.3d 1482 (7th Cir. 1997), affg. without published opinion T.C. Memo. 1996-252.

Although some have criticized the rationale of these decisions, even among these critics there appears to be no dispute that the APA does not affect the Tax Court's long-established practice of conducting trials de novo in deficiency actions.[3]

E.   De Novo Review in Actions Involving Claims for Relief From Joint and Several Liability

The original statutory provision for relief from joint and several liability, as contained in former section 6013(e), was enacted in 1971.  Although this relief provision postdated enactment of the APA, actions involving claims for relief under former section 6013(e) were subject to de novo review in both the Tax Court and the Federal District Courts, in the same manner as deficiency actions and tax refund actions always had been.  See, e.g., Terzian v. Commissioner, 72 T.C. 1164 (1979); Sanders v.

---

[3] The decision in O'Dwyer v. Commissioner, 266 F.2d 575 (4th Cir. 1959), affg. 28 T.C. 698 (1957), has been criticized as being "premised on a now-outmoded understanding that informal agency action cannot be reviewed based on an administrative record."  Robinette v. Commissioner, 439 F.3d 455, 461 (8th Cir. 2006), revg. 123 T.C. 85 (2004); see also Ewing v. Commissioner, 122 T.C. 32, 61 (2004) (Halpern and Holmes, JJ., dissenting) (characterizing O'Dwyer as being of "dubious" continuing relevance), vacated 439 F.3d 1009 (9th Cir. 2006).  Even these critics of O'Dwyer, however, do not appear to disagree with its holding that deficiency actions in the Tax Court are properly conducted de novo; but apparently they arrive at that conclusion by a different route, construing APA sec. 706(2)(F) narrowly as contemplating "trials de novo" in income tax deficiency proceedings seemingly to the exclusion of all other types of tax proceedings.  See Ewing v. Commissioner, supra at 61 (Halpern and Holmes, JJ., dissenting).  As discussed infra, this narrow interpretation of APA sec. 706(2)(F) is contrary to the legislative history of the APA and the well-established practice of the Tax Court and the District Courts.

United States, 369 F. Supp. 160 (N.D. Ala. 1973), affd. 509 F.2d 162 (5th Cir. 1975). Similarly, claims arising pursuant to the more recently enacted provisions of section 6015(b) and (c) are subject to de novo review. See, e.g., Alt v. Commissioner, 119 T.C. 306 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004). Hence, although an action for relief under former section 6013(e) or under section 6015(b) or (c) technically may not constitute a deficiency action, there appears to be no question that such actions are appropriately subject to trial de novo.

F.   Section 6015(f) Claims for Relief

    1.   Abuse of Discretion Standard Does Not Preclude De Novo Review.

Similarly, a claim for relief from joint and several liability that arises under section 6015(f) is appropriately subject to de novo judicial review. This is true even if the standard of review is for abuse of discretion. As the majority opinion discusses at page 13, this Court has long conducted trials de novo in numerous types of actions in which the pertinent question was whether the Commissioner had abused his or her discretion, for example, in determining that a taxpayer's method of accounting did not clearly reflect income under section 446 or in reallocating income or deductions under section 482.

Some have suggested that actions involving section 6015(f) claims for relief demand different treatment, reasoning that although de novo review of the Commissioner's exercise of

discretion is appropriate with respect to deficiency actions, it is inappropriate with respect to other actions, such as actions involving claims for relief from joint and several liability. Ewing v. Commissioner, 122 T.C. 32, 66 (2004) (Halpern and Holmes, JJ., dissenting), vacated 439 F.3d 1009 (9th Cir. 2006). The premise seems to be that APA section 706(2)(F) contemplates "trials de novo" in income tax deficiency actions but seemingly in no other type of tax proceeding, including actions involving claims for relief from joint and several liability. See id. at 60. No authority has been cited, and none has been discovered, in support of this restrictive view as to the types of tax matters subject to "trials de novo" under APA section 706(2)(F). As shown by the previous discussion, this restrictive view is not supported by the text or legislative history of the APA and is contradicted by the well-established practice of the courts (both the Tax Court and the District Courts) to review de novo claims for relief from joint and several liability.

2. Section 6015(f) Claims Arising in Deficiency Actions

In any event, section 6015(f) claims for relief can, and do, arise in deficiency actions, as affirmative defenses. If the taxpayer prevails on his or her claim for section 6015(f) relief, this Court will enter a decision reflecting a reduced deficiency due after application of section 6015(f). Notably, section 6015(f) claims in such cases will not necessarily arise as

challenges to administrative determinations made before the commencement of the Tax Court litigation. Section 6015(f) contains no requirement of an Appeals Office hearing. Nor does it fix a specific point from which to measure the Commissioner's determination. Consequently, while the Commissioner's determination can be made in response to a Form 8857, Request for Innocent Spouse Relief, it can also be made by way of an answer to a petition in this Court which might raise entitlement to relief under section 6015(f) for the first time as an affirmative defense. See, e.g., Cheshire v. Commissioner, 115 T.C. 183 (2000) (the taxpayer's claim for equitable relief was initiated in her petition, the Commissioner conceded partial relief before trial, and this Court held that the taxpayer was entitled to additional relief under section 6015(f)), affd. 282 F.3d 326 (5th Cir. 2002); Rowe v. Commissioner, T.C. Memo. 2001-325 (the taxpayer raised section 6015 claims in an amended petition, the Commissioner granted partial relief in his amended answer and subsequently conceded section 6015 relief for other items, and this Court held that the taxpayer was entitled to additional relief under section 6015(f)).

3. Section 6015 Claims Based on Administrative Inaction

In other cases, section 6015(f) claims might come before this Court on a stand-alone basis. The statute expressly contemplates that the petition might be filed in the Tax Court before there has

been any administrative action; it provides that if the Internal Revenue Service has failed to act on the individual's request for relief within 6 months, the individual may petition the Tax Court for relief. Sec. 6015(e)(1)(A)(i)(II).

Consequently, in a variety of circumstances section 6015(f) claims for relief may be raised in the Tax Court even in the absence of prior administrative action. In such circumstances limiting judicial review to the administrative record would be meaningless.

4. <u>Statutorily Mandated Standards and Procedures</u>

Statutorily mandated standards and procedures contemplate that the Tax Court will generally conduct trials de novo in its proceedings, including actions involving claims for relief from joint and several liability. Section 7453 provides that, with limited exceptions not relevant here, "the proceedings of the Tax Court * * * shall be conducted in accordance with such rules of practice and procedure (other than rules of evidence) as the Tax Court may prescribe and in accordance with the rules of evidence applicable in trials without a jury in the United States District Court of the District of Columbia." As previously discussed, this is substantially the same requirement that has been in effect since the inception of the Board of Tax Appeals in 1924; the requirement was in direct response to the legislative imperative that the Board independently compile the record upon which it

decided cases.  Moreover, section 7459 requires the Tax Court to make findings of fact in each report upon "any proceeding" instituted before the Tax Court.

     5.   <u>Jurisdictional Grant Under Section 6015(e) Contemplates Trials De Novo</u>

Section 6015(e)(1)(A) grants the Tax Court jurisdiction to "determine the appropriate relief available to the individual" who requests equitable relief under subsection (f).  Particularly in the light of this Court's inability to remand section 6015(f) cases for further administrative consideration, see <u>Friday v. Commissioner</u>, 124 T.C. 220 (2005), a trial de novo is appropriate and often necessary to enable the Court to determine the appropriate relief.  In determining the appropriate relief, it is not necessarily sufficient to decide whether the Commissioner abused his or her discretion.  For instance, the Court might conclude that the Commissioner had abused his or her discretion in the methodology or procedures employed in denying section 6015(f) relief but still decide after a de novo trial that no relief was appropriate.  Or the Court might conclude that the Commissioner had abused his or her discretion and decide on the basis of evidence presented at trial that the taxpayer was entitled to either partial or full relief.

As the majority opinion notes, the jurisdictional grant in section 6015(e)(1)(A) for the Tax Court to "determine the appropriate relief available to the individual" differs

significantly from its jurisdictional grant in section 6330(d)(1) "with respect to such matter" as may involve an Appeals office determination in a collection proceeding. Moreover, section 6015, unlike section 6330, contains no statutory requirement of an Appeals Office hearing, and there is no assurance of any meaningful record to review with respect to a section 6015(f) request for relief. The jurisdictional grant pursuant to section 6015(e)(1)(A) lies entirely with the Tax Court, so there is no risk of "disparate forms of judicial review depending on which court was reviewing" the claim for relief, as seemed to concern the Court of Appeals in Robinette v. Commissioner, 439 F.3d 455, 461 (8th Cir. 2006), revg. 123 T.C. 85 (2004), with respect to judicial review of collection determinations pursuant to section 6330.[4]

COLVIN, SWIFT, WELLS, GALE, and MARVEL, JJ., agree with this concurring opinion.

---

[4] In any event, the Court of Appeals' concern in this particular regard was addressed by Congress in the Pension Protection Act of 2006, Pub. L. 109-280, sec. 855, 120 Stat. 1019, which gave the Tax Court exclusive jurisdiction in collection matters to hear appeals from notices of determination issued after Oct. 16, 2006.

GOEKE, <u>J</u>., concurring:  I agree with the conclusion of the majority opinion but write separately for two reasons:  (1) Applying the record rule to section 6015(f) cases would be contrary to Congress's mandate that the Commissioner use the Appeals process for administrative hearings in section 6015(f) cases, and (2) an abuse of discretion standard is not the appropriate standard of review in section 6015(f) cases.

<u>The Record Rule Is Not Appropriate in Section 6015(f) Cases</u>

In addition to the reasons provided by the statutory analysis in the majority opinion, I believe that the Court's review of section 6015(f) decisions should not be limited to the administrative record because the informal Appeals process by which the Commissioner makes decisions under section 6015(f) is incompatible with a rule that limits the Court's review to a well-defined administrative record.  Any attempt to limit the Court's review to such a record would be problematic in the vast majority of section 6015(f) cases.

The Office of Chief Counsel attempted to define the "administrative record" in section 6015(f) cases in Chief Counsel Notice CC-2004-026 (July 12, 2004):

> The administrative record is that part of the petitioner's administrative file that the Service considered, or the petitioner or nonrequesting spouse submitted to the Service for consideration, with respect to petitioner's claim for relief.  This includes, but is not limited to, Form 8857, Request for Innocent Spouse Relief; Form 12507, Innocent Spouse Statement; Form 12508, Questionnaire for Nonrequesting Spouse; Form

> 12510, Questionnaire for Requesting Spouse; all written correspondence between the petitioner and the Service; all written correspondence between the nonrequesting spouse and the Service; any documents presented to the examiner or Appeals officer; the preliminary notice of determination; the final notice of determination; any written analysis by the examiner or Appeals officer; and the Appeals Case Memorandum.

Notably, this explanation does not include a record of any hearings or other oral communications between the taxpayer and the settlement officer.  In addition, what is characterized as the "administrative record" in fact ranges widely from case to case.  In some cases the stipulated administrative record includes draft reports and miscellaneous documents from the Internal Revenue Service's (IRS) Cincinnati Service Center.  In others, the administrative record consists of correspondence sent to the taxpayer and abbreviated notes from telephone conversations with the taxpayer.

Another practical problem with the record rule is that the administrative record, however defined, is frequently incomplete. Many taxpayers assume that the settlement officers will request more information if they do not have enough evidence to grant relief, and the taxpayers therefore do not produce all relevant evidence they have because they are not specifically asked for it. In some of these situations, consideration of additional evidence establishes that relief is appropriate even though the settlement officer initially denied relief.  See, e.g., Washington v. Commissioner, 120 T.C. 137 (2003).  In other cases the financial

situations of the taxpayers may deteriorate after the settlement officer denies relief, making it more likely that the taxpayers are eligible for relief on the basis of their economic hardship. While the Court should not relieve taxpayers of their burden of proving that relief is appropriate and coming forward with relevant evidence, it would be inconsistent with the focus of section 6015(f) on equitable relief for the Court to turn a blind eye to any relevant information that the taxpayer can provide unless the taxpayer withholds or conceals the information at the administrative level or otherwise fails to cooperate with the settlement officer.

Although the Court has long accepted telephone hearings in both section 6015 and 6330 cases, see, e.g., Greene-Thapedi v. Commissioner, 126 T.C. 1 (2006); Katz v. Commissioner, 115 T.C. 329, 337 (2000); Magee v. Commissioner, T.C. Memo. 2005-263; Hendricks v. Commissioner, T.C. Memo. 2005-72; Pahamotang v. Commissioner, T.C. Memo. 2003-177, the trend toward expediency has made it increasingly difficult to determine the accuracy of representations made about conversations between the taxpayer and the settlement officer. The Court is often left with only the often-cryptic notes of the settlement officer as evidence of those conversations.

This is not a criticism of the Commissioner's administrative practices. The Appeals process is and has been an expedited and

efficient means to resolve tax disputes.  The Appeals process has never been conducted to create a reviewable administrative record and is ineffective for that purpose.

Congress enacted section 6015 as part of the Internal Revenue Service Restructuring and Reform Act (RRA) of 1998, Pub. L. 105-206, sec. 3201, 112 Stat. 734, replacing section 6013(e).  In RRA Congress also mandated a reorganization of IRS, particularly the Appeals process:

> [The reorganization plan shall] ensure an independent appeals function within the Internal Revenue Service, including the prohibition in the plan of ex parte communications between appeals officers and other Internal Revenue Service employees to the extent that such communications appear to compromise the independence of the appeals officers.

RRA sec. 1001(a)(4), 112 Stat. 689.  Furthering this mandate, Senator Roth, Chairman of the Senate Finance Committee, explained in his statement introducing RRA for Senate debate:

> One of the major concerns we heard throughout our oversight initiative was that the taxpayers who get caught in the IRS hall of mirrors have no place to turn that is truly independent and structured to represent their concerns.  This legislation requires the agency to establish an independent Office of Appeals--one that may not be influenced by tax collection employees or auditors.  Appeals officers will be made available in every state, and they will be better able to work with taxpayers who proceed through the appeals process.

144 Cong. Rec. 14689 (1998) (Statement of Senator Roth).  As the Court discussed in Lewis v. Commissioner, 128 T.C. 48, 59-60 (2007), Congress saw the informal Appeals process as serving an important function in resolving tax disputes while giving

taxpayers a meaningful opportunity to voice their concerns.  But because the Appeals conferences in section 6015(f) cases have always been informal, the information that settlement officers receive from taxpayers to determine whether relief is appropriate is not always well documented.  A problem arises when the Commissioner attempts to limit the Court's review to the evidence contained in the administrative record, but because of the informality of the proceedings, the administrative record does not include a complete and accurate account of the taxpayer's situation.  Applying the Administrative Procedure Act (APA), 5 U.S.C. secs. 551-559, 701-706 (2000), to the administrative procedures under section 6015(f) might be effective if the Commissioner adopted formal procedures to review requests for relief under section 6015(f), but this would be contrary to the congressionally mandated use of the traditional Appeals function, which has never included transcripts of the hearings or records of the proceedings.

In Volentine & Littleton v. United States, 136 Ct. Cl. 638, 145 F. Supp. 952 (1956) (arising under the Wunderlich Act, which was the subject of United States v. Carlo Bianchi & Co., 373 U.S. 709 (1963), upon which the Court of Appeals for the Eighth Circuit in Robinette v. Commissioner, 439 F.3d 455 (8th Cir. 2006), revg. 123 T.C. 5 (2004), and the dissent in Ewing v. Commissioner, 122 T.C. 32 (2004), vacated 439 F.3d 1009 (9th Cir. 2006), relied

heavily), the Court of Claims considered the Government's argument that where a department's decision must be upheld unless it is "fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence", the court's review of the department's decision is limited to the administrative record. The court explained the flaw in the Government's argument as follows:

> There is logic in the Government's position. But we do not adopt it. It would require two trials in many cases involving this question. The first trial would include the presentation of the "administrative record" and its study to determine whether, on the basis of what was in it, the administrative decision was tolerable. But the so-called "administrative record" is in many cases a mythical entity. There is no statutory provision for these administrative decisions or for any procedure in making them. * * * Whoever makes it has no power to put witnesses under oath or to compel the attendance of witnesses or the production of documents. There may or may not be a transcript of the oral testimony. The deciding officer may, and even in the departments maintaining the most formal procedures, does, search out and consult other documents which, it occurs to him, would be enlightening, and without regard to the presence or absence of the claimant.

Volentine & Littleton v. United States, 136 Ct. Cl. at 641-642.

Although Volentine & Littleton arose under a different statute, the logic used therein is compelling in the context of section 6015(f) cases. Even after United States v. Carlo Bianchi & Co., supra, the Court of Claims adhered to the idea that the Supreme Court did not create a rule of general application in that case. Brown v. United States, 184 Ct. Cl. 501, 396 F.2d 989 (1968). The Court of Claims adopted the rule that whether to

apply the record rule is a matter that should be determined after considering the relationship between the judicial function and the role of the agency, as well as the adequacy of the administrative record.  Id. at 506-517, 396 F.2d at 993-999.  In cases such as the one before the Court, where the Court is well equipped to apply section 6015(f) to individual taxpayers and the settlement officer has frequently failed to create an administrative record adequate for the Court's review, a de novo review of the facts is appropriate.

In many of the cases where courts have found it appropriate to limit their review to the administrative record, the administrative record was clearly defined and extensive and, if there was an administrative hearing, closely resembled the record that would be created in one of our own cases.  For example, in United States v. Carlo Bianchi & Co., supra at 711, the Board of Claims and Appeals of the Corps of Engineers created a substantial record by holding an adversarial hearing, allowing the parties to offer evidence, and allowing each side the opportunity for cross-examination.  In United States v. Iron Mountain Mines, Inc., 987 F. Supp. 1250, 1253-1254 (E.D. Cal. 1997), the smaller of the two administrative records at issue contained 359 documents, including reports from a 2-year investigation, comments and proposals submitted by interested parties, and the agency's responses to those comments and proposals.  The larger of the administrative

records contained 2,648 of the same types of documents.  Id. at 1254; see also NVE, Inc. v. HHS, 436 F.3d 182 (3d Cir. 2006).

The APA itself suggests that hearings conducted under its rules will be well documented.  APA section 556, 5 U.S.C. sec. 556, which provides the rules for hearings conducted under APA sections 553 and 554, explains the contents of the record as follows:

> (e) The transcript of testimony and exhibits, together with all papers and requests filed in the proceeding, constitutes the exclusive record for decision in accordance with section 557 of this title and, on payment of lawfully prescribed costs, shall be made available to the parties.  When an agency decision rests on official notice of a material fact not appearing in the evidence in the record, a party is entitled, on timely request, to an opportunity to show the contrary.

By contrast, the administrative record in section 6015(f) cases does not include testimony or a transcript of the conference.  Furthermore, the administrative record is rarely, if ever, given to the taxpayer in full to allow the taxpayer to present before the Court a case based on the administrative record.  Finally, because settlement officers unilaterally decide what information is shared with the taxpayer and generally control what is included in the administrative record, the safeguard available to parties to APA hearings under APA section 556--to ask for the opportunity to contradict agency findings based on material facts not in the record--would offer little protection to taxpayers in section 6015 cases.

While courts have applied the record rule in cases where the procedures are less formal than section 6015(f) conferences, the record rule was generally more appropriate in those cases because the agencies' decisions did not depend as heavily on informal communication with individuals.  See, e.g., Camp v. Pitts, 411 U.S. 138, 140-141 (1973); Holy Land Found. For Relief and Dev. v. Ashcroft, 333 F.3d 156, 163 (D.C. Cir. 2003); Beno v. Shalala, 30 F.3d 1057, 1073-1074 (9th Cir. 1994).  In those cases, resolution of the dispute depended largely on written information available to the agency even without substantial evidentiary submissions by the other party, making a clearly defined administrative record unnecessary.

By contrast, equitable relief under section 6015(f) depends largely upon statements and evidence provided by the requesting spouse, and the requesting spouse generally has few resources available to ensure that the statements and evidence produced are completely and adequately represented in the record.  The Court often receives an incomplete administrative record where the truth of the  parties' claims is difficult to determine.  As the majority opinion points out, the Court holds trials de novo under section 6015(e)(1)(A)(i)(II) where a taxpayer petitions the Court 6 months after filing an election for section 6015 relief and has not received a determination, and in such cases the administrative record is generally deficient.  The Court also allows intervention

by the nonrequesting spouse in both deficiency cases and stand-alone cases, and allows the nonrequesting spouse to present evidence that is not part of the administrative record.[1]  In the administrative process, the Commissioner recognizes that intervenors have the right to participate; but because intervenors have even less of an opportunity to create a complete and accurate administrative record than requesting spouses, the Court allows intervenors to supplement the record at trial.  See King v. Commissioner, 115 T.C. 118, 124-125 (2000).  In deficiency cases, the Court accepts evidence outside of the administrative record where taxpayers may raise section 6015(f) as an affirmative defense.  The fact that section 6015(e) commits review of innocent spouse cases to the Tax Court confirms that Congress believes that the Court is well equipped to address questions under section 6015(f).

Rejecting the record rule does not mean that taxpayers will be free to withhold information at the administrative level and then introduce it at trial.  Where the settlement officer has requested relevant facts or documents from the taxpayer and the taxpayer has not cooperated, the Court may exclude evidence that

---

[1] While Rev. Proc. 2003-19, 2003-1 C.B. 371, gives the nonrequesting spouse the right to participate at the administrative level, in practice, the nonrequesting spouse frequently suffers from the same problems as the requesting spouse in building a complete administrative record and does not have a statutory right to an in-person or telephone hearing.

is not part of the administrative record.  However, the Court should not assume that because certain facts or evidence are not in the administrative record it necessarily follows that the taxpayer had an adequate opportunity to present them.

My concern is that lost in the statutory debate both in our Court and in the Courts of Appeals is the impracticality of the Commissioner's narrow position and the inconsistency of the Commissioner's position with decades of administrative practice in the Appeals process.

The Standard of Review

I agree with Judge Wherry's concurring opinion that the Court should not apply an abuse of discretion standard of review in section 6015(f) cases.  I write separately to explain in greater detail why the Court's current reliance on Butler v. Commissioner, 114 T.C. 276 (2000), and its progeny as the source of the Court's standard of review in section 6015(f) cases, is misplaced in the light of the amendment to section 6015(e)(1) by the Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. C, sec. 408(a), 120 Stat. 3061.

After Congress enacted section 6015 in RRA sec. 3201, Butler v. Commissioner, supra, was the first Tax Court case to consider the Court's jurisdiction to review the Commissioner's denial of

relief under section 6015(f).[2]  In <u>Butler v. Commissioner</u>, <u>supra</u> at 289, the Court faced the issue of whether the Commissioner's decision to deny relief under section 6015(f) was subject to judicial review at all or was committed to agency discretion. The Court then concluded that it had jurisdiction to review the Commissioner's denial of relief under section 6015(f) and stated without discussion that the standard of review was abuse of discretion.[3]  <u>Id.</u> at 292.

Section 6015(f) provides that the Commissioner "may" grant relief under certain circumstances, indicating that the Commissioner's decision is discretionary.  Before 2006 Congress had not specified whether the Court had jurisdiction to review the Commissioner's decision whether to grant relief under section

---

[2]  <u>Mira v. United States</u>, 245 Bankr. 788 (Bankr. M.D. Pa. 1999), was the first case to address this issue.  The court concluded that because of the word "may" in sec. 6015(f), the Commissioner's determinations were committed to agency discretion by law and therefore were not reviewable by any court.  <u>Id.</u> at 792.

[3]  In <u>Butler v. Commissioner</u>, 114 T.C. 276, 291 (2000), the Court found that there was an ascertainable standard upon which to review the Commissioner's discretionary denial of relief pursuant to sec. 6015(f), pointing out that the Court had applied a facts and circumstances analysis in considering the application of former sec. 6013(e)(1)(D), which uses substantially the same language as the current sec. 6015(f).  The Court supported this argument by citing cases such as <u>Terzian v. Commissioner</u>, 72 T.C. 1164 (1979), and <u>Kistner v. Commissioner</u>, T.C. Memo. 1995-66, where the Court made de novo determinations of whether the taxpayers satisfied former sec. 6013(e)(1)(D).  However, the Court declined to apply the same standard of review to sec. 6015(f) as it had applied to former sec. 6013(e)(1)(D).

6015(f) or, if it did, what standard of review the Court should use. Although section 6015(e) gave the Court jurisdiction to determine appropriate relief under section 6015(b) and (c), it was silent as to section 6015(f). In the absence of any clear guidance from Congress, it was logical for the Court in Butler v. Commissioner, supra, to hold that it did have jurisdiction to review the Commissioner's decisions but to find that the standard of review was abuse of discretion because of the discretionary language in section 6015(f).

After the Court's Opinion in Billings v. Commissioner, 127 T.C. 7 (2006), Congress amended section 6015(e)(1) to make it clear that the Court has jurisdiction to review taxpayers' requests for equitable relief under section 6015(f). However, section 6015(e)(1) does not provide the Court with jurisdiction to review the Commissioner's decision but "to determine the appropriate relief available to the individual under this section". (Emphasis added.)

After section 6015(e)(1) was amended, the Court continued to review the Commissioner's denial of relief under section 6015(f) using an abuse of discretion standard, relying on Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003), and Butler v. Commissioner, supra. Banderas v. Commissioner, T.C. Memo. 2007-129; Ware v. Commissioner, T.C. Memo. 2007-112; Farmer v. Commissioner, T.C. Memo. 2007-74; Van

Arsdalen v. Commissioner, T.C. Memo. 2007-48.  The Court in Jonson v. Commissioner, supra at 125, stated that the Court reviews the Commissioner's denial of relief under section 6015(f) for an abuse of discretion, citing Butler v. Commissioner, supra at 292, as the source of the Court's jurisdiction.

While it was logical for the Court in Butler and other pre-Billings cases to review the Commissioner's denial of relief under section 6015(f) for an abuse of discretion using the reasoning of Mailman and Gardner, given the ambiguity in section 6015(e)(1) at the time, the amendment to section 6015(e)(1) warrants a reconsideration of our standard of review in section 6015(f) cases.  This explicit grant of authority to make determinations under section 6015(f) in section 6015(e)(1) should now be the source of the Court's standard of review.

COLVIN, SWIFT, FOLEY, MARVEL, WHERRY, and KROUPA, JJ., agree with this concurring opinion.

WHERRY, J., concurring in the result: I agree with the majority's designated scope of review but write separately to urge the adoption of a matching standard of review when the merits of this case are decided.[1] The majority concludes that the Administrative Procedure Act, 5 U.S.C. secs. 551-559, 701-706 (2000), does not control and that our scope of review in this case allows us to look beyond the administrative record. The majority then correctly notes that the Court has historically applied an abuse of discretion standard of review in determining whether relief is warranted. See Butler v. Commissioner, 114 T.C. 276, 291-292 (2000); see also Fernandez v. Commissioner, 114 T.C. 324, 332 (2000). However, notwithstanding the caselaw cited by the majority regarding the standard of review, section 6015(e) itself provides no basis for the imposition of that deferential standard of review in any section 6015 case.[2]

---

[1]The majority denies respondent's motion in limine to limit our review to the administrative record. The Court has not yet applied a standard of review because it has yet to address the merits of petitioner's case.

In addition, although the terms "scope of review" and "standard of review" are sometimes used interchangeably, there is undoubtedly a difference between them. Our "scope of review" relates to what we will consider in determining whether the Commissioner committed an error. Our "standard of review" relates to how much, if any, deference to afford the Commissioner in determining whether an error was made.

[2]It is unclear to me why the Court has adopted a deferential standard of review when addressing sec. 6015(f) even in the context of a petition for redetermination of a deficiency, a

(continued...)

Given that the recent amendment to section 6015(e), Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. C, sec. 408(a), (c), 120 Stat. 3061, 3062, resolves any lingering doubts regarding our jurisdiction over section 6015(f) cases, it is appropriate to revisit the issues of the scope and standard of review to be used in determining whether such relief is warranted. Moreover, because section 6015(e) grants us the authority to determine whether relief is warranted under section 6015(b), (c), and (f), we look to subsection (e), rather than to subsection (f), in order to determine the appropriate scope and standard of review in section 6015 cases.  Section 6015(e) provides in relevant part as follows:

> SEC. 6015(e). Petition for Review by Tax Court.--
>
>     (1) In general.--In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply, <u>or in the case of an individual who requests equitable relief under subsection (f)</u>--
>
>         (A) In general.--In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief

---

[2](...continued) context in which our standard of review is normally unrestricted. See <u>Butler v. Commissioner</u>, 114 T.C. 276, 291-292 (2000).

That the Court has conducted de novo trials using an abuse of discretion standard of review under other circumstances sheds no light whatsoever on whether it should do so in this particular context.  In addition, considering evidence that was not part of the administrative record while at the same time analyzing the agency's decision for an abuse of discretion presents difficult conceptual problems.

available to the individual under this section if such petition is filed * * *. [Emphasis added.]

I agree with the majority that the use of the word "determine" suggests that Congress intended for us to use a de novo scope of review in determining the appropriateness of relief under section 6015(f). In other instances where the word "determine" or "redetermine" is used, such as in sections 6213 and 6512(b), the Court applies a de novo scope of review and standard of review. If, as the majority notes, the use of the word "determine" in section 6015(e) suggests a de novo scope of review, why does it not also suggest a de novo standard of review?

Importantly, nothing in section 6015(e) suggests that Congress intended for us to use an abuse of discretion standard of review, despite the fact that, in similar circumstances, Congress has shown that it knows how to limit our standard of review when it wants to. See sec. 6404(h) (providing the Court with jurisdiction "to determine whether the Secretary's failure to abate interest * * * was an abuse of discretion" (emphasis added)).[3] In amending section 6015(e), Congress gave us

---

[3] Sec. 6404 was amended in a historical context similar to that in which Congress recently amended sec. 6015(e). Before statutory amendments in 1996, this Court lacked jurisdiction to determine whether interest abatement was warranted; whether a taxpayer warranted such relief was entirely within the discretion of the Secretary. See Beall v. United States, 336 F.3d 419, 425 (5th Cir. 2003). In 1996, Congress amended sec. 6404 to give us jurisdiction to determine whether interest abatement is warranted under an abuse of discretion standard of review. In amending

(continued...)

jurisdiction over section 6015(f) cases without any such limitation.[4]

An abuse of discretion standard of review is also at odds with our decision to decline to remand section 6015(f) cases to the Secretary for reconsideration. Friday v. Commissioner, 124 T.C. 220, 222 (2005). Section 6330 is analogous to section 6015(f) insofar as both sections consider economic hardship as a factor in determining whether relief is appropriate. In section 6330(d)(2), Congress provided that the Internal Revenue Service Office of Appeals would retain jurisdiction over collection cases to allow it to consider changes in the taxpayers' circumstances. The fact that Congress did not include a similar provision in section 6015 is consistent with the recent amendment to section 6015(e)(1) that allows the Court to determine whether relief for taxpayers under section 6015(f) is appropriate. See Friday v. Commissioner, supra at 222 ("There is in section 6015 no analog to section 6330 granting the Court jurisdiction after a hearing at the Commissioner's Appeals Office.").

---

[3](...continued)
sec. 6015(e) to provide unequivocally that we possess jurisdiction over sec. 6015(f) cases, Congress imposed no such limitation upon our standard of review.

[4]See Franklin Natl. Bank v. New York, 347 U.S. 373, 378 (1954) ("We find no indication that Congress intended to make this phase of national banking subject to local restrictions, as it has done by express language in several other instances.").

Finally, it is noteworthy that section 6015(e)(1), which addresses our jurisdiction over requests for innocent spouse relief, applies to subsections (b), (c), and (f).  The Court applies a de novo scope and standard of review in determining whether relief is warranted under subsections (b) and (c).  See, e.g., <u>Alt v. Commissioner</u>, 119 T.C. 306, 313-316 (2002) (applying the abuse of discretion standard of review only to section 6015(f), not subsection (b) or (c)), affd. 101 Fed. Appx. 34 (6th Cir. 2004).  Because subsection (e) grants us jurisdiction to "determine the appropriate relief available" under subsections (b), (c), and (f), our scope and standard of review should be the same in all cases under section 6015.  There is no reason to single out taxpayers seeking relief under subsection (f) for disparate treatment.  Yet, that is the consequence of a nonuniform standard of review in innocent spouse cases.

COLVIN, SWIFT, FOLEY, GALE, MARVEL, GOEKE, and KROUPA, <u>JJ</u>., agree with this concurring opinion.

HALPERN and HOLMES, <u>JJ</u>., dissenting:  Respectfully, we dissent.  The majority repeats what we considered to be the error of its analysis in <u>Ewing v. Commissioner</u>, 122 T.C. 32, 56, 57-67 (2004) (Halpern and Holmes dissenting with respect to the scope of review appropriate to the Commissioner's determination), vacated 439 F.3d 1009 (9th Cir. 2006).  We see no need to repeat, or elaborate on, what we said in <u>Ewing</u>.