T.C. Memo. 2012-121

UNITED STATES TAX COURT

CATHERINE MARIE NUNEZ, f.k.a. CATHERINE
MARIE URIARTE, Petitioner, AND
ROBERT F. URIARTE, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15168-10.                        Filed April 25, 2012.

Catherine Marie Nunez, pro se.

Robert F. Uriarte, pro se.

<u>Matthew D. Carlson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, Judge:  The issue for decision is whether petitioner is entitled to relief from joint and several liability under section 6015(f)[1] for taxes reported on joint Federal income tax returns for 1999, 2000, and 2001 (years at issue).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts is incorporated herein by this reference.  At the time petitioner filed her petition, she resided in California.

Petitioner and intervenor were married on August 3, 1985.  They had one child together, Robert A. Uriarte.  Prior to her marriage to intervenor, petitioner had two children of her own, Chrissie M. Moore (Chrissie) and Adrian J. van de Water.  In August 2002 petitioner and intervenor legally separated.  They divorced the following year on May 1, 2003.  During their marriage petitioner and intervenor owned and operated a copier service, Alpha Copy Products (Alpha).  Petitioner took care of the administrative side of the business.  She entered data into Quickbooks,

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

organized and filed receipts and invoices, answered phones, wrote up service calls, and paid bills. Intervenor made sales and serviced Alpha's clients. In 2002 petitioner began to draw a salary from Alpha.

Alpha's business records, including licenses and State payroll tax deposit coupons, listed petitioner and intervenor as Alpha's coowners. As a coowner petitioner was authorized to write checks from Alpha's business accounts. During the years at issue she wrote many checks from Alpha's account, some of which were personal.

Petitioner and intervenor filed joint Federal income tax returns for the years at issue. The 1999 joint return reported a total tax of $15,930, an estimated tax penalty of $567, and a tax liability of $16,497. The 2000 joint return reported a total tax of $17,041, an estimated tax penalty of $917, and a tax liability of $17,958. The 2001 joint return reported a total tax of $15,570, an estimated tax penalty of $616, and a tax liability of $16,186. Aside from small amounts of interest income and a $6,796 gain from the sale of two automobiles in 2001, the income reported on the joint returns for the years at issue was attributable to Alpha. Petitioner and intervenor failed to make quarterly payments of estimated tax and failed to pay the tax shown as due on the joint returns. At the time she signed the returns for the

years at issue, petitioner was aware that intervenor had failed to make the required quarterly estimated tax payments.

Sometime before 2002 petitioner and intervenor filed for bankruptcy. They were unable to make the required payments as required by their bankruptcy plan, and their bankruptcy case was dismissed.

In 2002 after falling out of bankruptcy, petitioner and intervenor decided to divorce. That year they signed a marital settlement agreement, which did not address petitioner and intervenor's joint Federal income tax liabilities. However, as part of the marital settlement agreement petitioner assigned all her rights, title, and interest in Alpha to intervenor as his sole and separate property.[2] Following the divorce intervenor once again elected to file for bankruptcy. Petitioner choose not to file for bankruptcy.

In 2008 respondent attempted to collect the unpaid Federal income taxes for the years at issue from petitioner. On January 13, 2009, petitioner filed a Form 8857, Request for Innocent Spouse Relief, requesting relief under section 6015(f) from her 2000 and 2001 tax liabilities. On April 6, 2009, she filed a revised Form 8857 to include her 1999 tax liability. Intervenor submitted Forms 12508,

_____

[2]The marital settlement agreement characterized Alpha as community property.

Questionnaire for Non-Requesting Spouse, in which he objected to petitioner's request for innocent spouse relief for the years at issue.

Respondent found that petitioner was not eligible for innocent spouse relief and proposed to deny her request for relief under section 6015(f) for the years at issue. Petitioner in turn filed a Form 12509, Statement of Disagreement, appealing respondent's preliminary determination. Petitioner's case was sent to respondent's Appeals Office (Appeals) for review.

Appeals sent two letters to intervenor informing him of petitioner's appeal. The letters were addressed to the address intervenor listed on his Forms 12508. Both letters were returned as undeliverable. Appeals then sent duplicate copies of the two letters to petitioner's home address where intervenor had previously lived. All prior written communications with intervenor had been sent to a post office box, not the address listed in his Forms 12508 or petitioner's home address.

With no response from intervenor, Appeals determined that petitioner was entitled to relief under section 6015(f). They mailed her a Form 870-IS, Waiver of Collection Restrictions in Innocent Spouse Cases. The Form 870-IS granted relief to petitioner in full for the years at issue. The cover letter enclosed with the Form 870-IS stated that respondent's decision was contingent upon any response respondent received from intervenor and that respondent would contact petitioner

if the determination was revised on the basis of any reply from intervenor. Petitioner signed the Form 870-IS on November 17, 2009, and returned it to Appeals, where respondent's Appeals team manager signed the form on December 17, 2009.

In March 2010 intervenor spoke with Appeals and informed them that he had been unaware of petitioner's appeal of the preliminary determination and that he contested her entitlement to innocent spouse relief. Because intervenor had not had an opportunity to participate in prior Appeals proceedings, Appeals reopened petitioner's case for innocent spouse relief. Intervenor argued that petitioner was a part owner of Alpha and as a result she should remain jointly liable for the tax liability attributable to Alpha. Petitioner argued that she was not a coowner of Alpha and was only listed on business documents and records because of California's community property laws.

Appeals subsequently denied petitioner's request for relief in full for each of the years at issue. Appeals determined that under California's community property laws, had petitioner filed a separate return from intervenor for the years at issue, she would have been liable for tax on 50% of Alpha's income. Thus petitioner should not be entitled to complete relief for the years at issue. Instead, Appeals offered petitioner partial relief. Appeals offered petitioner relief of 50% of the tax liability

attributable to Alpha for each of the years at issue. Petitioner declined Appeals' offer and filed a petition with this Court on July 6, 2010. Petitioner requests full relief from the tax liability for the years at issue under section 6015(f). On November 1, 2010, intervenor filed a notice of intervention and was added as a party to this case.

## OPINION

We must decide whether Appeals erred in denying petitioner relief from unpaid joint tax liabilities for the years at issue. Petitioner argues she believed intervenor would pay their tax liabilities and that it is inequitable to hold her liable when the underpayments were attributable to his business. Respondent now joins petitioner in arguing that she is entitled to innocent spouse relief.

The Commissioner has the discretion to relieve a spouse of joint liability if, taking into account all the facts and circumstances, it is inequitable to hold that spouse liable for any deficiency or unpaid tax. Sec. 6015(f); sec. 1.6015-4(a), Income Tax Regs. This Court has jurisdiction to determine whether a taxpayer qualifies for relief under section 6015(f). Sec. 6015(e).

I.    Scope of Review, Standard of Review, and Burden of Proof

We begin with the scope of review, the standard of review, and the burden of proof. Respondent urges us to review the case for abuse of discretion. To do so,

however, would be to reject our previous holdings that the scope of review and the standard of review are de novo. Porter v. Commissioner, 132 T.C. 203 (2009); Porter v. Commissioner, 130 T.C. 115 (2008). The spouse requesting relief generally bears the burden of proof. See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 Fed. Appx. 34 (6th Cir. 2004).

II.      Equitable Relief Under Section 6015(f)

The Commissioner has outlined procedures to guide Internal Revenue Service employees in determining whether a requesting spouse qualifies for equitable relief under section 6015(f). See Rev. Proc. 2003-61, 2003-2 C.B. 296. During the years at issue the requesting spouse had to meet seven threshold conditions before the Commissioner would consider a request for relief.[3] Id. sec. 4.01, 2003-2 C.B. at 297.

---

[3]See Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. 296, 297 (all requesting spouses must meet seven threshold conditions:  (i) the requesting spouse filed a joint return for the taxable year for which he or she seeks relief; (ii) relief is not available to the requesting spouse under section 6015(b) or (c); (iii) the requesting spouse applies for relief no later than two years after the date of the Service's first collection activity after July 22, 1998, with respect to the requesting spouse; (iv) no assets were transferred between the spouses as part of a fraudulent scheme by the spouses; (v) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (vi) the requesting spouse did not file or fail to file the return with fraudulent intent; and (vii) absent enumerated exceptions, the income tax liability from which the requesting spouse seeks relief is attributable to an item of the individual with whom the requesting spouse filed the joint return).

Respondent concedes that petitioner has met the preliminary threshold requirements for relief. Intervenor did not address the threshold requirements in his posttrial brief and thus fails to specifically contest respondent's concession. Instead, intervenor argues generally that petitioner is not entitled to innocent spouse relief under section 6015(f). We must determine whether petitioner met the preliminary threshold requirements of the revenue procedure. We agree with respondent that petitioner met the first six threshold requirements. The seventh threshold condition requires that

> (7) The income tax liability from which the requesting spouse seeks relief is attributable to an item of the individual with whom the requesting spouse filed the joint return (the "nonrequesting spouse"), unless one of the following exceptions applies:
>
> (a) <u>Attribution solely due to the operation of community property law</u>. If an item is attributable or partially attributable to the requesting spouse solely due to the operation of community property law, then for purposes of this revenue procedure, that item (or portion thereof) will be considered to be attributable to the nonrequesting spouse.
>
> (b) <u>Nominal ownership</u>. If the item is titled in the name of the requesting spouse, the item is presumptively attributable to the requesting spouse. This presumption is rebuttable. For example, H opens an individual retirement account (IRA) in W's name and forges W's signature on the IRA in 1998. Thereafter, H makes contributions to the IRA and in 2002 takes a taxable distribution from the IRA. H and W file a joint return for the 2002 taxable year, but do not report the taxable distribution on their joint return. The Service later proposes a deficiency relating to the taxable IRA distribution and assesses the deficiency against H and W. W requests relief from joint and several

liability under section 6015. W establishes that W did not contribute to the IRA, sign paperwork relating to the IRA, or otherwise act as if W were the owner of the IRA. W thereby rebutted the presumption that the IRA is attributable to W.

(c) <u>Misappropriation of funds</u>. If the requesting spouse did not know, and had no reason to know, that funds intended for the payment of tax were misappropriated by the nonrequesting spouse for the nonrequesting spouse's benefit, the Service will consider granting equitable relief although the underpayment may be attributable in part or in full to an item of the requesting spouse. The Service will consider relief in this case only to the extent that the funds intended for the payment of tax were taken by the nonrequesting spouse.

(d) <u>Abuse not amounting to duress</u>. If the requesting spouse establishes that he or she was the victim of abuse prior to the time the return was signed, and that, as a result of the prior abuse, the requesting spouse did not challenge the treatment of any items on the return for fear of the nonrequesting spouse's retaliation, the Service will consider granting equitable relief although the deficiency or underpayment may be attributable in part or in full to an item of the requesting spouse.

Rev. Proc. 2003-61, sec. 4.01(7), 2003-2 C.B. at 297.

Petitioner and respondent argue that Alpha was intervenor's business and that any item of Alpha's income or expense attributable to her is solely due to the operation of California's community property law. We disagree. The record is filled with evidence that petitioner coowned Alpha during the years at issue and was heavily involved in its operations. Petitioner took care of the administrative side of the business. She entered data into Quickbooks, organized and filed receipts and

invoices, answered phones, wrote up service calls, paid the company's bills, and coordinated and provided the accountant with all the tax preparation information. Petitioner also drafted budgets, attempting to have her say in how the business was run.[4]

Additionally, State filings and business records show that petitioner was an owner of Alpha during the years at issue. Petitioner was listed as an owner of Alpha on its business license and on California payroll tax deposit coupons. Petitioner was also listed on Alpha's fictitious business name statement, which states that the business is conducted by husband and wife. Further, the marital settlement agreement divided community property between petitioner and intervenor. As part of the division petitioner assigned to intervenor as his sole and separate property all of her rights, title, and interest in Alpha.

Petitioner's own statements and actions lead us to believe she considered herself a coowner of Alpha. Petitioner wrote checks from Alpha's bank accounts for personal expenses, including a number of checks to herself, to Chrissie,[5] and out to cash. These checks ranged from $100 to $1,165. Further, as part of her Form

---

[4]That said, we note that petitioner claims that intervenor disregarded her budgets and ideas and ran the business as he pleased.

[5]Checks were written to Chrissie van de Water, which was her maiden name during the years at issue.

8857 petitioner attached a letter in which she wrote: "My Ex husband Roberto Uriate wanted to keep the business and he was entrusted to use the income from the business to help me support our son and pay the bankruptcy payments. Because of this promise I did not ask for any compensation for my share of the business as his wife of 17 years."

Furthermore, we do not find that petitioner qualifies for any of the exceptions under Rev. Proc. 2003-61, sec. 4.01(7). As discussed above, attribution to petitioner is not solely due to the operation of community property law. Additionally, petitioner does not qualify for the nominal ownership exception. Alpha was titled in petitioner's name and thus there is a rebuttable presumption that Alpha's items of income and expense are attributable to her. Petitioner fails to rebut this presumption. Petitioner was actively involved in the business. She signed all paperwork, knew her name was on the business licenses and records, and used Alpha's funds as if they were her own.

Also, petitioner failed to introduce evidence that intervenor misappropriated funds intended to pay their Federal tax liability. If anything, intervenor has introduced evidence of petitioner's using thousands of dollars of Alpha's funds for personal expenses, funds that could have been used to satisfy their Federal tax liability. Finally, petitioner has not demonstrated that there was abuse not

amounting to duress. In order to qualify for the fourth and final exception to the seventh threshold requirement, a requesting spouse must establish that she was the victim of abuse prior to signing the return at issue, and that, as a result of that prior abuse, the requesting spouse did not challenge the treatment of any items on the return for fear of the nonrequesting spouse's retaliation. Though petitioner has introduced evidence of abuse, she has not alleged that she signed the returns out of fear. In fact, petitioner, not intervenor, worked with the accountant to prepare the returns at issue. Moreover, petitioner wrote a check during the years at issue to the Internal Revenue Service for payment of their tax liability.

After weighing the evidence, we find that petitioner did not meet the seventh threshold requirement of Rev. Proc. 2003-61, supra. After weighing the testimony and evidence in this fact-intensive and nuanced case, we hold petitioner is not entitled to relief from joint and several liability for the joint income tax for each of the years at issue.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

An appropriate order and
decision will be entered.