# United States Tax Court

T.C. Memo. 2026-16

PETER L. CLINCO, DECEASED, C. M. BARONE-CLINCO,
SUCCESSOR IN INTEREST, AND C. M. BARONE-CLINCO,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 8077-23.                      Filed February 9, 2026.

————————

*Abraham R. Wagner*, for petitioners.

*Heather H. Lee*, *Michael K. Park*, and *Kimberly A. Santos*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

HOLMES, *Judge*: The late Peter Clinco and his wife, C.M. Barone-Clinco, filed a joint return for the 2015 tax year, which included filing Schedules C for Clinco's law practice and family restaurant and a Schedule E for two rental properties. The Commissioner argues that they underreported gross receipts for the restaurant and failed to prove their claim for depreciation of the rental properties.

The Clincos disagree.

## FINDINGS OF FACT

### I. *Background*

Clinco was an attorney, whose practice focused on real-estate leasing and representing small businesses. He was also an entrepreneur who spent much of his time running MedCafe Westwood,

[*2] LLC—a restaurant and bar near UCLA. MedCafe was a family business: Clinco owned 66.6%; his brother Michael owned the other 33.4% through 2014; and a third brother, David, was the manager and bookkeeper. Clinco was in charge of dealing with vendors, landlords, the city, and other third parties, and he supervised MedCafe's daily operations. He spent around 25–30 hours a week on the restaurant, and in 2015, he converted MedCafe into a single-member LLC.

MedCafe had approximately 60 employees, most of whom worked only three to four hours a shift. It did not record tips or claim a tips deduction. Employees received tips at the end of each day, including cash paid by customers, which was not deposited into MedCafe's bank accounts, and they were themselves responsible for recording the tips that they earned. Clinco estimated that 90% of MedCafe's income came from credit-card payments and 10% came from cash. Some payments were processed through Grubhub.

II. *The Clincos' 2015 Tax Return*

Clinco prepared his own 2015 Forms 1065, U.S. Return of Partnership Income, and 1040. He filed the Form 1040 jointly with his wife, and it was filed late: the IRS received the Clincos' 2015 tax return in September 2018.

On his 2015 Schedule C for MedCafe, Clinco reported gross receipts of more than $1.6 million. After claiming $1.4 million in cost of goods sold and $600,000 in total expenses, Clinco reported a net loss for MedCafe of about $400,000.

Clinco also owned two rental properties and claimed depreciation deductions on his Schedule E. He attached to that schedule Forms 4562, Depreciation and Amortization, on which he stated he had placed the properties in service in May 2015. The properties were both in Pasadena. One was an apartment building with what Clinco claimed was a basis of about $1.8 million and depreciation of about $41,000. The second was a single-family home with what he claimed was a basis of $700,000 and depreciation of about $16,000. He did not provide any additional information on how he arrived at these bases or the depreciation deductions, which added up to about $57,000.

III. *The Audit*

Revenue Agent (RA) Yi Liu began examining Clinco's returns in 2019. Clinco was already quite sick, and his accountant took the greater

[*3] portion of the conversations with the RA. The RA did meet with Clinco personally to discuss his delinquency in filing, to ask for documents, and to better understand his health concerns which contributed to the delays in resolving his tax troubles. It was in this meeting that Clinco estimated 10% of the restaurant revenues were in cash. The conversations between the RA, Clinco's accountant, and on occasion Clinco himself continued through late 2020.

The RA found in the end that there was a discrepancy between the gross receipts for 2015 as Clinco reported them and the audited gross receipts based on the credit-card-sales-to-cash ratio. This prompted the RA to summons Clinco's bank records to conduct a bank-deposits analysis. She identified many transfers and nontaxable deposits, but there were also some deposits she identified as business income from UCLA, Grubhub, and other payors. We summarize:

| Bank Account | RA's Analysis |
|---|---|
| Chase No. 0436 | The RA reviewed each deposit into this account. There were several transactions that were not deemed income (such as transfers). The identified items that were taxable as income were cash deposits and checks made payable to MedCafe. |
| Chase No. 8203 | The RA reviewed each deposit. Most items were transfers which she deemed nontaxable. There were several cash deposits into this account. |
| Chase No. 9631 | The RA determined that this was one of the main accounts for the business. The RA reviewed each deposit and identified those that were taxable from Amex, Bankcard, UCLA, Grubhub, other checks made payable to MedCafe, and cash deposits. There were also nontaxable returns and refunds. |
| Chase No. 0670 | The account had several cash deposits. |
| City National No. 5081 | The RA determined this was another main business account. There were several deposits from merchants (Bankcard and Amex), cash deposits, Grubhub payments, and checks from customers. |
| City National Nos. 1208, 1194, and 3446 | These accounts had small cash deposits. |

The RA also pulled third-party 1099 Information Return Processing (IRP) data to identify payments to MedCafe from third-party

[*4] payors.[1]  This revealed four important Forms 1099: a Form 1099–MISC issued to MedCafe by UCLA, a Form 1099–K, Payment Card and Third Party Network Transactions, issued to MedCafe by First Data Reporting, a Form 1099–K issued to MedCafe by American Express, and a Form 1099–K issued to MedCafe by Grubhub.  The RA reconciled her bank-deposits analysis with the third-party IRP data and Clinco's statements about unreported cash receipts to determine MedCafe's gross receipts:

| Source | Income Type | Total |
|---|---|---|
| UCLA | Form 1099–MISC | $36,486 |
| First Data Reporting | Form 1099–K | 1,387,536 |
| American Express | Form 1099–K | 615,280 |
| Grubhub | Form 1099–K | 21,361 |
| Clinco's admission | Estimated cash receipts (10% of gross income) | 228,929 |
| **Amount of Deficiency** | | $2,289,592 |

The resulting notice of deficiency for the 2015 tax year had a short menu of adjustments—underreported gross receipts, unsubstantiated depreciation on the two Pasadena properties, a section 6651(a)(1)[2] addition to tax, and a section 6662(a) penalty.

IV.  *This Case*

Within months after the Commissioner sent the notice of deficiency, Clinco passed away.  The Clincos timely filed a petition.  They resided in California when they filed.[3]

---

[1] The IRS's IRP system receives data submitted by employers and other third parties reporting income of taxpayers during the year, such as Forms 1099–MISC, Miscellaneous Income.  *See, e.g.*, *Frantz v. Commissioner*, T.C. Memo. 2020-64, at *6 n.5.

[2] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[3] Appellate venue therefore presumptively lies in the Ninth Circuit.  *See* § 7482(b)(1)(A).

**[*5]** There are three questions:

- was the notice of deficiency invalid because it was not properly signed;

- was MedCafe's income understated; and

- is Clinco entitled to the depreciation that he claimed?[4]

We address these issues in order.

OPINION

I. *Notice of Deficiency*

Clinco's challenge to the validity of the notice of deficiency serves up one apparently serious question: Must one of the Commissioner's employees manually sign a notice of deficiency? But it is accompanied by a garnish we've reviewed in orders but not in an opinion: What should we do when lawyers cite hallucinated authorities likely generated through artificial intelligence (AI)?

A. *Legitimacy of the Signature*

Clinco argues that a notice of deficiency must be signed in ink by an IRS employee with legitimate delegated authority for it to be valid, and thus for us to have jurisdiction. He assumes that Form 4549–A, Report of Income Tax Examination Changes, is the notice of deficiency. He then argues that the Form 4549–A that he got was never signed as required by Internal Revenue Manual (IRM) 4.8.9.11.1 (Jan. 10, 2023).[5] He argues that a wet signature, not an electronic signature, on the Form 4549–A is necessary for the notice of deficiency to be valid.

We are not convinced.

Letter 531 is the notice of deficiency, as the bold typeface heading on the first page declares. Form 4549–A is listed as an enclosure with

---

[4] Clinco also put various additions to tax and penalties in issue but ended up conceding the untimely-filing addition to tax and did not challenge the accuracy-related penalty at trial.

[5] The IRM provides internal guidance for IRS employees on operating and administering tax law. It does not have the force of law, and it does not confer enforceable rights on taxpayers. *Fargo v. Commissioner*, 447 F.3d 706, 713 (9th Cir. 2006), *aff'g* T.C. Memo. 2004-13.

[*6] that letter. The Letter 531 Clinco received is signed by David H. Okuda, the technical services territory manager. Initials follow Okuda's name, indicating the signature was imprinted by a delegated signing official. *See* IRM 4.8.9.11.1. The IRM provides ample methods for signing notices, including by delegation, a typed name, and an electronic image. I.R.M. 4.8.9.11.1 (Signing Notices), 4.10.1.4.4 (Aug. 28, 2025) (Digital Signatures), 10.10.1.3.1.1 (Oct. 17, 2023) (Acceptable Forms of Electronic Signatures). The notice of deficiency sent to Clinco satisfies these requirements.

The IRM provisions tell us what makes a signature valid, but it doesn't even require us to find that a notice of deficiency must be signed to be valid. Caselaw tells us that even an unsigned notice of deficiency is valid. *See Tavano v. Commissioner*, 986 F.2d 1389, 1390 (11th Cir. 1993) ("The Code does not expressly require a notice of deficiency to be signed"), *aff'g in part* T.C. Memo. 1991-237; *Urban v. Commissioner*, 964 F.2d 888, 889 (9th Cir. 1992), *aff'g per curiam* T.C. Memo. 1991-220. This question has been settled since before World War II. *See Commissioner v. Oswego Falls Corp.*, 71 F.2d 673, 677 (2d Cir. 1934), *aff'g* 26 B.T.A. 60 (1932).

B.     *Fabricated Case Citations*

The persuasiveness of Clinco's argument collapses like an overmixed soufflé when one looks at the citations used to prop it up. Mr. Wagner, Clinco's attorney, cites four cases in support. Three appear to be hallucinations generated by a large language model AI.

He cites "*Cacchillo v. Commissioner*, 130 T.C. 132 (2008)," as a case where a taxpayer challenged the validity of the notice of deficiency because it lacked an official signature. He claims we held that the IRS's failure to issue a valid signed notice of deficiency ousted us of jurisdiction. "*Cacchillo v. Commissioner*" does not, however, exist. Page 132 in volume 130 of the Tax Court Reports is within *Porter v. Commissioner*, 130 T.C. 115 (2008), and that page discusses the standard of review for section 6015(f) claims for relief—completely unrelated to the case before us.

Mr. Wagner claims "*Cacchillo v. Commissioner*" overturned "*Miller v. Commissioner*, 57 T.C. 440 (1971)," and "*Tefel v. Commissioner*, 118 T.C. 324 (2002)." He elaborated:

In *Tefel* the Tax Court did note that the case clarified that while substantial compliance may be sufficient, the IRS

**[*7]** must still meet the signature and other formal requirements in issuing the [statutory notice of deficiency]. While some cases allowed for minor errors in the issuance process, critical requirements like a signature must be followed for a Notice of Deficiency to be valid.

Neither of these cases exist as cited. *Miller v. Commissioner*, T.C. Memo. 1984-448 (not the citation provided by Mr. Wagner) mentions a notice of deficiency in passing in the findings of fact, but only to state that one was sent. There is no discussion of the formal requirements of such a notice. Page 440 in volume 57 of the Tax Court Reports is within *Winfield Manufacturing Co. v. Renegotiation Board*, 57 T.C. 439 (1971)—a case in which there is no mention of a notice of deficiency whatsoever.

There is no case named "*Tefel v. Commissioner*," and page 324 of volume 118 of the Tax Court Reports is a paragraph in *Hillman v. Commissioner*, 118 T.C. 323 (2002)—a case discussing the tax treatment of management fees in an S corporation.

The Commissioner catalogued the questionable citations in his answering brief, but Mr. Wagner chose not to clarify their origins in his reply. He even listed "*Cacchillo v. Commissioner*, 130 T.C. 132 (2008)," again in his table of authorities. The bouillabaisse of case names, reporter citations, and legal propositions suggests something cooked up by AI. Such apparitions have made frequent appearances in legal briefing in recent years, and we echo the conclusions articulated by other courts: Their presence is unacceptable.[6]

Submitting a brief with fictitious caselaw is a recipe for sanctions and a clear violation of Rule 11(b) of the Federal Rules of Civil

---

[6] There is by now a smorgasbord of cases condemning fake citations. *See, e.g.*, *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, No. 17-cv-81140, 2025 WL 1440351, at *7 (S.D. Fla. May 20, 2025); *Ramirez v. Humala*, No. 24-cv-424, 2025 WL 1384161 (E.D.N.Y. May 13, 2025); *Nguyen v. Savage Enters.*, No. 24-cv-00815, 2025 WL 679024 (E.D. Ark. Mar. 3, 2025); *Lacey v. State Farm Gen. Ins. Co.*, No. 24-cv-5205, 2025 WL 1363069 (C.D. Cal. May 5, 2025); *Johnson v. Dunn*, 792 F. Supp. 3d 1241, 1246 (N.D. Ala. 2025). And, one must confess, even judges have contributed to this stew. *See, e.g.*, Alex Ebert, *Judges' AI Blunders Spark Debate on Technology Use in Courts*, Bloomberg Law (Dec. 1, 2025), https://news.bloomberglaw.com/business-and-practice/judges-ai-blunders-spark-debate-on-technology-use-in-courts.

**[\*8]** Procedure.[7] We reiterate Chief Justice Roberts's advice to lawyers who write briefs with citations of nonexistent cases: "Always a bad idea." *2023 Year-End Report on the Federal Judiciary* 6 (Dec. 31, 2023). That is certainly true in this case.[8]

## II.  *Understated Revenues*

The notice of deficiency identified three categories of underreported revenues:

| Source | Amount |
|--------|--------|
| Form 1099–MISC | $36,486 |
| Form 1099–K | 2,024,177 |
| Estimated Cash Receipts | 228,929 |

The Commissioner then trimmed off about $82,000 when he agreed with Clinco that some of the checks deposited into the MedCafe accounts were capital contributions and not revenue at all. This still led him to assert that Clinco had underreported gross revenue by about $2.2 million.

Clinco does raise a legitimate challenge to the Commissioner's assertion that he underreported his 2015 Schedule C gross receipts. He makes three arguments:

---

[7] "By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . ." Fed. R. Civ. P. 11(b). Our Court doesn't have an equivalent apart from Rule 33(b), which governs pleadings, but lawyers who appear before us must follow the Model Rules of Professional Conduct. Rule 201(a). Model Rule 3.3(a)(1) does ban knowingly making a false statement of law and also requires a lawyer to correct a false statement previously made.

[8] It is not absolutely clear from the record whether Mr. Wagner used generative AI to secure legal precedent for his arguments. A bit of embarrassment for failure to citecheck, failure to 'fess up, and (if it occurred) use of AI to write a section of the brief is enough for now. But courts have begun to more seriously sanction lawyers who use AI as a shortcut in drafting. *See, e.g.*, Rafael P. McLaughlin, *Lawyer Sanctioned for Failure to Catch AI "Hallucination"*, ABA Litigation News (Mar. 13, 2025), https://www.americanbar.org/groups/litigation/resources/litigation-news/2025/lawyer-sanctioned-failure-catch-ai-hallucination/. Tax Court has not done so. Yet.

**[\*9]**

- the Commissioner did not sufficiently substantiate the sources of unreported income;

- the Commissioner improperly classified some of Clinco's capital contributions as income; and

- Medcafe was never profitable.

We address each.

On the Form 4549–A enclosed with the notice of deficiency, the Commissioner identified three sources of unreported gross receipts: (1) a Form 1099–MISC; (2) a Form 1099–K; and (3) estimated cash receipts. Clinco contends the sources are unsubstantiated, because the Commissioner initially failed to identify a specific source of 1099–MISC income. Clinco likewise claims that the Commissioner never identified the Form 1099–K listed on the Form 4549–A, but then admits that the inclusion of "Form 1099–K" on Form 4549–A was the aggregated sum of three Forms 1099–K, whose issuers the Commissioner did identify before trial.

As to the estimated cash receipts, Clinco argues, "No information was provided by Respondent as to how . . . 'Estimated Cash Receipts' in the amount of $228,929 was estimated." This is a bit more reasonable. The Commissioner, however, is authorized to reconstruct a taxpayer's income if the method the taxpayer employs doesn't clearly reflect income. § 446(b). His reconstruction of income need only be reasonable in light of all surrounding facts and circumstances. *Id.*; *Petzoldt v. Commissioner*, 92 T.C. 661, 687, 693 (1989). Once his reconstruction is determined in a notice of deficiency, the Commissioner is presumed correct, and the taxpayer bears the burden of proving otherwise. *See Welch v. Helvering*, 290 U.S. 111, 115 (1933). Clinco can satisfy this burden if he proves by a preponderance of the evidence "that the deficiency is incorrect or was arbitrarily derived." *See Merkel v. Commissioner*, 192 F.3d 844, 852 (9th Cir. 1999), *aff'g* 109 T.C. 463 (1997).

The Commissioner was authorized to reconstruct Clinco's income when he discovered the discrepancy between Clinco's reported gross receipts in 2015 and the audited gross receipts based on the credit-card-sales-to-cash ratio, thus revealing that Clinco's tax return might not have accurately reported his income. The Commissioner identified the

**[\*10]** Forms 1099 through IRP data and the estimated cash receipts through the RA's interview with Clinco. These sources are not arbitrary. Nor has Clinco demonstrated they are incorrect. Clinco notes the possibility of the Commissioner's confusing MedCafe for another UCLA restaurant—Café Med. He also asserts that the Department of Government Efficiency has found errors in some IRS records, which he relies on to say the Commissioner's analysis is likely faulty. These objections, however, are entirely speculative—he offers no substantive evidence for either of them.

We therefore find that the Commissioner correctly identified the income from Form 1099–MISC, Forms 1099–K, and the estimated receipts.

Clinco also argues that he deposited more than $385,000 of personal funds into MedCafe's bank accounts but that the Commissioner improperly classified these capital contributions as income. After receiving the notice of deficiency, Clinco sent the RA an email detailing his contributions to MedCafe. The RA considered the evidence in the email, determined Clinco made $82,242.18 in capital contributions, and before trial revised the calculation of taxable gross receipts and Clinco's deficiency accordingly. Clinco has provided no evidence of additional contributions. The existence of some substantiated deposits does not support a finding of other unsubstantiated deposits.

Clinco bears the burden of showing the Commissioner's bank-deposits analysis is inaccurate. *See Palmer v. IRS*, 116 F.3d 1309, 1312 (9th Cir. 1997). If Clinco could show that the Commissioner's bank-deposits analysis includes nontaxable deposits, the burden would shift back to the Commissioner to try to rehabilitate it. *See Clayton v. Commissioner*, 102 T.C. 632, 645 (1994). But an email without more is not such a showing, so we cannot find the Commissioner incorrectly classified some capital contributions as income.

Clinco finally argues that MedCafe "never made a profit and had in fact been in bankruptcy." Even money-losing businesses, however, can have unreported income.

The Commissioner wins this one.

III.   *Schedule E Depreciation*

For the 2015 tax year, Clinco claimed $56,798 in Schedule E depreciation for two rental properties he placed in service in May 2015.

[*11] He filed Forms 4562 for both properties. He reported a basis of $1,799,100 for the apartment building in Pasadena. And he reported a basis of $700,000 for the single-family home. But he did not provide any substantiation for the bases of these properties or evidence of when they were placed in service. He argued instead that he had claimed the same depreciation allowance for 2017 and that the Commissioner never questioned those amounts.

Taxpayers are allowed to deduct a reasonable amount for the depreciation of property used in a trade or business, or property held for the production of income, but they must prove the deduction with adequate records. §§ 167(a), 6001; *see also* I.R.S. Pub. 583, Starting a Business and Keeping Records (rev. Dec. 2024). This usually means purchase and sales invoices, real-estate closing statements, and canceled checks that show "the property's depreciable basis, . . . the cost of the property, its useful life, and [any] previously allowable depreciation." *Cluck v. Commissioner*, 105 T.C. 324, 337 (1995); *see also Smith v. Commissioner*, 800 F.2d 930, 933 (9th Cir. 1986) ("A taxpayer must demonstrate entitlement to a deduction by showing that he comes within the terms of a statute allowing the deduction." (citing *Interstate Transit Lines v. Commissioner*, 319 U.S. 590, 593 (1943))). Whether Clinco claimed the deprecation in a later tax year is no proof he was entitled to the depreciation for 2015.

## CONCLUSION

Respondent prevails on most of the issues, but the revision of MedCafe's gross receipts means that—

*Decision will be entered under Rule 155.*